1  CRAIG A. BURNETT, ESQ. ID. #118907
   LAW OFFICES OF C. BURNETT
2  537 FOURTH STREET, SUITE A
   SANTA ROSA, CALIFORNIA 95401
3  Telephone: (707) 523-3328
   Fax: (707) 523-3082
4  Email: cburnett@sonic.net

5  Attorney for Appellant

6              UNITED STATES DISTRICT COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8

9  IN RE:                        )   Case No.  CV 08-1109 VRW
                                 )
10 SHANNON M. FALK,              )   On Appeal From U.S. Bankruptcy Court
                                 )   Case No. 07-10865
11            Debtor.            )   Chapter 11
                                 )
12 _____ )   Adversary Proceeding No. 07-1080
                                 )
13 SHANNON M. FALK               )   APPELLANT'S OPENING BRIEF
                                 )
14            Plaintiff,         )
                                 )
15 vs.                           )
                                 )
16 MICHAEL T. FALK               )
                                 )
17            Defendant.         )
   _____ )
18                               )
                                 )
19 MICHAEL T. FALK,              )
                                 )
20            Appellant,         )
                                 )
21 vs.                           )
                                 )
22 SHANNON M. FALK,              )
                                 )
23            Appellee.          )
   _____ )

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. BASIS OF APPELLATE JURISDICTION ........................................................................................
1

II. STATEMENT OF ISSUES PRESENTED AND THE APPLICABLE STANDARD OF REVIEW..
1

    A. Issue Presented on Appeal.................................................................................... 1

    B. Applicable Standard of Review............................................................................ 1

III. STATEMENT OF THE CASE................................................................................. 1

    A. Facts................................................................................................................. 1

IV. ARGUMENT ...................................................................................................... 3

    A. There was no transmutation of the character of the limited partnership interests

        pursuant to California Family Code Section 852(a)................................................ 3

    B. Even if there was a transmutation, Appellant should have the opportunity to assert

        a claim of undue influence......................................................................... 6

        1. A presumption of undue influence applies to the interspousal transactions

           which took place on June 2, 2004................................................................. 6

        2. Appellee bears the burden of rebutting the presumption of undue influence........... 7

V. CONCLUSION.................................................................................................... 7

# TABLE OF AUTHORITIES

## Cases

**Pages**

*Cooter & Gell v.  Hartmax Corp.*, 496 U.S. 384 (1990)......................................................................

1

*Easley v.  Cromartie,* 532 U.S. 234 (2001)...............................................................    1

*Estate of MacDonald*, 52 Cal.3d 262 (1990)..............................................................    3,4

*In re Lawson,* 122 F.3d 1237 (9th Cir.  1997)...........................................................

1

*In re Lopez*, 192 B.R. 539, 543 (9th Cir BAP 1996)..............................................    1

*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624...........................................    6

*In re Pena,* 155 F. 3d 1108 (9th Cir.  1998)..............................................................    1

*In re Rifino*, 245 F 3d. 1083 (9th Cir. 2001)..............................................................    1

*Marriage of Starkman*, 129 Cal.App.4th 659 (2005)..............................................

4,5

## Statutes

 28 United States Code Section 158(a)(1)....................................................................

1

California Family Code Section 852(a)...................................................................    1,3

California Family Code Section 721(b)...................................................................    6

*APPELLANT'S OPENING BRIEF*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*APPELLANT'S OPENING BRIEF*

1  **I.  BASIS OF APPELLATE JURISDICTION**

2           This Court has appellate jurisdiction pursuant to 28 U.S.C. section 158(a)(1).

3  **II.  STATEMENT OF ISSUES PRESENTED AND THE APPLICABLE STANDARD OF**

4  **REVIEW**

5           **A.  Issue Presented on Appeal**

6           The issue on appeal is whether or not certain property interests were transmuted in character

7  from separate property to community property pursuant to California Family Code Section 852(a)[1].

8           **B.  Applicable Standard of Review**

9           Questions of law are reviewed *de novo* and findings of fact for clear error.  *In re Lawson,* 122

10 F.3d 1237, 1240 (9th Cir.  1997)*; In re Rifino*, 245 F 3d. 1083, 1087 (9th Cir. 2001); I*n re Pena,* 155 F. 3d

11 1108,1110 (9th Cir.  1998); *Easley v.  Cromartie,* 532 U.S. 234, 242 (2001).

12          A bankruptcy court abuses its discretion if its decision is based on an erroneous view of the law

13 or on a clearly erroneous factual finding.  *See Cooter & Gell v.  Hartmax Corp.*, 496 U.S. 384, 405

14 (1990); *In re Lopez,* 192 B.R. 539, 543 (9th Cir BAP 1996) ("A bankruptcy court would necessarily

15 abuse its discretion if it based its rulings upon an erroneous view of the law or a clearly erroneous

16 assessment of the evidence.").

17 **III.  STATEMENT OF THE CASE**

18          The present case originated as a marital dissolution action instituted in the Superior Court of

19 California, County of Sonoma.  Afterwards, while the marital dissolution action was still pending,

20 Appellee filed a Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of

21 California.  Appellee then filed a motion for summary judgment for a determination that certain limited

22 partnership interests were transmuted in character from Appellant's separate property to community

23 property of the parties.  Appellant filed a cross motion for summary judgment for a determination that

24 the limited partnerships were not community property.  The Bankruptcy Court granted Appellee's

25 motion and denied Appellant's motion.

26

27          [1] California Code of Civil Procedure Section 852(a) provides that "A transmutation of real or personal property is
not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse
28 whose interest in the property is adversely affected."

**A. Facts**

The parties were married on September 9, 1989.  See Docket #10 at p. 1, ll. 26-27.

In 1993, during the marriage of Appellant and Appellee, Appellant inherited certain property interests from his mother.  *Id.* at p. 2, ll. 24-25.  The relative inherited interests were as follows.

1. Limited Partnership Interest of One Point Five Percent in 110 West 40, LLC, a New York Limited Liability Company.

2. Partnership interest of Three Percent in Ten West Thirty-Third Joint Venture.

*Id.* at p. 2, ll. 13-23.

On June 2, 2004, Appellant and Appellee signed the following documents: (A) an Amendment in its Entirety to the Michael T. And Shannon M. Falk Marital Trust (Docket #7, Exh. B.), (B) the Property Agreement (*Id.* at Exh. A), and (C) the Assignment of Interest in Limited Partnership (*Id.* at Exh. C).

In part, the Amended Marital Trust Agreement provided as follows.

1. <u>Character of Trust Property:</u>  **Any property transferred to or withdrawn from from the trust shall retain its character as community property or separate property after its transfer or withdrawal.**  The Grantors and the Trustees agree that the Trustee shall retain and have only such powers with respect to the community property of the Grantors as, under California law, are consistent with such property of the Grantors contributed to the trust being and remaining their community property." Docket #7, Exh. B, p. 1 (Emphasis added).

Similarly, the Property Agreement stated and declared that all property transferred to the Marital Trust shall retain its character and ownership as it was prior to the Transfer:

2. **We declare that any property, or interest in property, owned by either if us before our marriage or acquired by either of us at any time by gift or inheritance and that is registered or otherwise held in either of our names alone or that is designed as separate property under our Trust is the separate property of that spouse."** Docket #7, Exh. A (Emphasis added).

On January 1, 2006, Appellee filed for a legal separation in the Sonoma County Superior Court which was later amended to a dissolution of marriage.  See Docket #10, p. 2, ll. 3-6.

Appellee, filed a Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of California.  Within this action, Appellee filed a motion for summary judgment for a

1    determination that certain limited partnership interests were transmuted in character from Appellant's

2    separate property to community property of the parties.  See Docket #7.

3         On January 22, 2008, a Memorandum on Cross Motions for Summary Judgment was entered on

4    the docket.  See Docket #27.

5         On February 1, 2008, an order was entered on the docket granting Appellee's motion for

6    summary judgment.  See Docket #28.

7    **IV.  ARGUMENT**

8         **A.  There was no transmutation of the character of the limited partnership interests**

9    **pursuant to California Family Code Section 852(a).**

10        California Family Code Section 852(a) provides that "A transmutation of real or personal

11   property is not valid unless made in writing by an express declaration that is made, joined in, consented

12   to, or accepted by the spouse whose interest in the property is adversely affected."

13        The seminal case interpreting Section 852(a) is *Estate of MacDonald* (1990*)* 52 Cal.3d 262, 272

14   Cal. Rptr. 153, where the California Supreme Court held that a writing signed by the adversely affected

15   spouse is not an "express declaration" for the purpose of Section 852(a) unless it contains language

16   which expressly states that the characterization of ownership of the property is being changed.

17   *MacDonald* involved a second marriage for both the husband and the wife.  The parties intended to

18   leave their own property to their own children.  The husband received a $266,557.90 distribution from a

19   pension plan in which the wife possessed a community property interest.  The wife signed distribution

20   papers consenting to the distribution of the funds into IRA accounts held solely in the husband's name.

21   The wife later was diagnosed with cancer and died.  Her executrix sued for determination of her

22   community property interest in the IRA accounts.

23        The California Supreme Court, interpreting California Civil Code § 5110.730(a), the predecessor

24   of Section 852(a), noted that the term "express declaration" was unclear and ambiguous, and analyzed

25   legislative intent to determine how to construe the term.  *Id.* at p. 268.  The Court noted that "it seems

26   reasonable to assume that the Legislature intended Section 5110.730(a) to invalidate some claimed

27   transmutations even though some form of writing existed." *Id.* at p. 270.  The Court then went on to

28

*APPELLANT'S OPENING BRIEF*

1  fashion a test "by which courts may judge the adequacy of particular writings for section 5110.730(a)

2  purposes." *Ibid.*

3     The *MacDonald* Court concluded that "a writing signed by the adversely affected spouse is not

4  an 'express declaration' for the purposes of section 5110.730(a) unless it contains language which

5  expressly states that the characterization or ownership of the property is being changed." *MacDonald,*

6  *supra,* at p. 272. (emphasis in original). Under the facts before it, the *MacDonald* Court found that the

7  consent paragraph transferring the IRA funds into an account solely in husband's name did not

8  expressly state that the wife was effecting a change in the character or ownership of her interest. The

9  *MacDonald* Court stated:

10        It is not possible to tell form the face of the consent paragraphs, or even from the fact of the
          adoption agreements, as a whole, whether decedent was aware that the legal effect of her
11        signature might be to alter the character or ownership of her interest in the pension funds. There
          is certainly no language in the consent paragraphs, or the adoption agreements as a whole,
12        expressly stating that decedent was effecting a change in the character or ownership of her
          interest. *Id.* at pp. 272-273.

13     The court further stated that an express declaration need not expressly state "transmutation" and

14  "the paragraph signed by the decedent here would have been sufficient if it had included an additional

15  sentence reading: 'I give to the account holder any interest I have in the funds deposited into this

16  account'" *Id.* at p. 273.

17     In *Marriage of Starkman* (2005) 129 Cal. App. 4th 659, 662, 28 Cal. Rptr. 3d. 639, the husband

18  owned significant separate property that was transferred into a revocable trust during the marriage as a

19  part of the couple's estate planning. The husband transferred his separate property into the trust without

20  stating that the property retained its separate nature. The relevant portion of the trust agreement

21  provided: "Settlors agree that any property transferred by either of them to the Trust...is the community

22  property of both of them unless such property is identified as the separate property of either Settlor." *Id.*

23  at p. 662. Contemporaneously with the execution of the trust, the husband and wife executed a general

24  assignment which did not specifically exclude any property as separate property of either spouse. The

25  general assignment conveyed "any asset, whether real, personal or mixed....[they] now own or which we

26  may own in the future." *Id.* at p. 662. Upon the dissolution of the marriage, husband revoked the trust

27  and the wife asserted that the stock transferred to trust transmuted the separate property of the husband

28

to community property. *Id.* at p. 662.

The California Court of Appeal in *Starkman* determined that the trust agreement did not intend to transmute the property and the stock remained the separate property of the husband, stating "[The Trust's] purpose is not an agreement between [wife] and [husband] to transmute the entirety of [husband's] substantial separate property assets into community property.  Neither the sentence in Paragraph 2.03 upon which [wife] relies, nor the conveyance to the Trust effected by the General Assignment...unambiguously establishes that [husband] was effecting a change of ownership in the entirety of his significant separate estate." *Starkman*, at pp. 664-65.

The express declaration must unambiguously indicate a change in character or ownership of property. ***A party does not 'slip into a transmutation by accident."*** *Id.* at 664 (citation omitted) (emphasis added).

In the present case, the bankruptcy Court found that the Property Agreement was what constituted the transmutation.  See Docket #27, at p. 3, ll. 14-15.   However, the agreement did not make any reference to a transmutation or contain an express declaration that Appellant intended to transmute the separate property character of his interests in the limited partnership interests to community property.   Moreover, the Property Agreement appears to have conflicting provisions.  While the first paragraph of the Property Agreeement states that "all property owned by us on the date of this Agreeeement . . . is our community property", the second paragraph of the same agreeement states that "any property, or interest in property, owned by either of us . . by . . . inheritance . . . is the separate property of that spouse."  See Docket #10, Exh. A.

Finally, the Property Agreement unambiguously states that the parties intent was for the determination of character of the property at issue to be "upon the death of either of us".  *Ibid.*  There is no statement that the agreement was intended to be effective upon a dissolution of marriage.

The bankruptcy Court reasoned that, since the Assignment transferred the limited partnership interests into the Trust, and the Property Agreement provided that any property in the trust was changed to community property, then the limited partnership interests that were transferred into the trust were community property.  However, one provision of the trust provided that all property transferred or

withdrawn from the trust was to retain its community or separate property character.  Specifically,

Article 1 Section C of the Trust provided as follows:

"C.  Character of Trust Property.  Any property transferred to or withdrawn from the trust shall retain its character as community property or separate property after transfer or withdrawal.  The Grantors and the Trustees agree that the Trustees shall retain and have only such powers with respect to the community property of the Grantors as, under California law, are consistent with such property of the Grantors contributed to the trust being and remaining their community property."

The foregoing provision indicates an intent to maintain the separate property status of the parties' separate property after it was transferred into the trust and if subsequently removed from the trust.  At the very least, the aforementioned provisions are unclear as to exactly what the intent of the parties was.

**B.  Even if there was a transmutation, Appellant should have the opportunity to assert a claim of undue influence.**

In the present case, the Bankruptcy Court ruled on a motion for summary judgment which asserted that there was a transmutation.  Appellee responded to the motion and asserted that there was not a transmutation.  However, Appellant was not given the opportunity to address the issue of undue influence after the Court ruled that there had been a transmutation because the Court ordered that Judgment be entered.  See Docket #28, p. 2.

**1. A presumption of undue influence applies to the interspousal transactions which took place on June 2, 2004.**

California Family Code Section 721(b) provides in relevant part as follows:

(b) Except as provided in Sections 143, 144, 146, 16040, and 16047 of the Probate Code, in transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other."

The foregoing statute gives rise to a presumption between spouses when they engage in a transaction between themselves.  "The prerequisite elements for the statutory presumption under section 721 to apply are: (1) there exists an interspousal transaction; and (2) one spouse has obtained an advantage over the other."  *In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 629 (citing

1  *Marriage of Haines*, (1995) 33 Cal.App.4th 277, 301).

2      In the present case, the interspousal transaction which took place consisted of four documents

3  which were signed by both parties on June 2, 2004.  The first document was entitled "Amendment in its

4  Entirety to the Michael T. and Shannon M. Falk Marital Trust", the second was entitled "Property

5  Agreement", and the third was entitled "Assignment of Interest in Limited Partnership".  See Docket

6  #10, Exhs. A, B, C.

7      Given that the Bankruptcy Court found that the aforementioned interspousal transactions

8  transmuted Appellant's separate property into community property, Appellee gained an advantage over

9  Appellant.

10      **2.  Appellee bears the burden of rebutting the presumption of undue influence.**

11      After a determination that the presumption of Section 721 applies, Appellee must demonstrate

12  that the inter-spousal transaction was (a) freely and voluntarily made: (b) with full knowledge of all of

13  the facts; and (c) that the transfer was made with a complete understanding of the effect.  *Haines, supra*,

14  at 296.  Appellee cannot meet this burden.

15  **V.  CONCLUSION**

16      Based on the foregoing, Appellant requests that this Court reverse the Bankruptcy Court's

17  rulings which granted Appellee's summary judgment motion and denied Appellant's cross motion for

18  summary judgment.  Appellant requests an order that Judgment be entered in favor of appellant.

19      Alternatively, if this Court upholds the Bankruptcy Court's orders regarding disposition of the

20  summary judgment motions, Appellant requests that the Bankruptcy Court's order for entry of Judgment

21  in favor of Appellee be reversed and that the matter be remanded for further hearing regarding the issue

22  of undue influence.

23                          Respectfully Submitted,

24  Date: 7/09/08

25                          /S/ Craig A. Burnett_____
                            Craig A. Burnett, Attorney for Appellant
26

27

28

*APPELLANT'S OPENING BRIEF*

-7-

1

2

# PROOF OF SERVICE BY MAIL

3

4       I declare that:  I am employed in the County of Sonoma.  I am over the age of eighteen years and
not a party to the within action; my business address is 537 Fourth Street, Suite A, Santa Rosa,

5    California 95401.

6           On **July 9, 2008,** I served copies of the within:

7                         **APPELLANT'S OPENING BRIEF**

8    in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully
prepaid, in the United States Mail at Santa Rosa, California, addressed as follows:

9

10          David N. Chandler, Esq.
            1747 Fourth Street

11          Santa Rosa, CA 95406-0609

12

            I declare under penalty of perjury that the foregoing is true and correct.

13

            Executed on **July 9, 2008,** at Santa Rosa, California.

14

15                              /S/ Craig A. Burnett
                                Craig A. Burnett

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                              *APPELLANT'S OPENING BRIEF*

                                    -8-