1  David N. Chandler, Sr.   SBN 60780
   David N. Chandler, Jr.   SBN 235427
2  DAVID N. CHANDLER, p.c.
   1747 Fourth Street
3  Santa Rosa, California 95404
   (707) 528-4331
4
   Attorney for Appellee
5  Shannon Falk

6

7              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
8

9

10
    IN RE:                    )   No. **CV 08-01109 VRW**
11                            )
    SHANNON M. FALK,          )
12                            )   BK No. 07-10865
         Debtor.             )
13  _____  )   Chapter 11
                              )
    SHANNON FALK,             )
14                            )   A.P. No. 07-1080
         Plaintiff/Appellee,  )
15                            )
    v.                        )
16                            )
    MICHAEL FALK,             )
17                            )   APPELLEE'S
         Defendant/Appellant. )   EXCERPTS OF RECORD
18  _____  )

19

20                  on Appeal From
             The United States Bankruptcy Court
21             Northern District of California
                  _____
22

23

24

25

26

27

28

Law Offices
of
**David N. Chandler, p.c.**
1747 Fourth Street
Santa Rosa, CA 95404
(707) 528-4331

1

## INDEX

2

3

4   <u>Document</u>                                                    <u>E.R. No.</u>

5   11/13/07     Answer to Complaint  . . . . . . . .  1

6   11/21/07     Motion For Summary Judgment
             Declarations of Shannon Falk and
7            David N. Chandler; Memorandum Of
             Points And Authorities. . . . . . . .  2
8
9   11/21/07     Notice of Hearing On Motion For
             Summary Judgment  . . . . . . . . . .  3

10  12/05/07     Declaration of Defendant Michael
             T. Falk In Opposition Of Motion For
11           Summary Judgment Filed By Plaintiff
             Shannon Falk and in Support of
12           Counter Motion For Summary Judgment
             Filed By Defendant Michael T. Falk . .  4
13
14  12/05/07     Evidentiary Objections Filed By
             Defendant Michael T. Falk In
15           Opposition To The Motion For Summary
             Judgment Filed By Plaintiff
16           Shannon Falk . . . . . . . . . . . . .  5

17  01/22/08     Memorandum On Cross Motions For
             Summary Judgment . . . . . . . . . .  6

18  02/01/08     Order Granting Plaintiff's Motion
             For Summary Judgment . . . . . . . .  7
19
20  01/11/08     Transcript of Proceedings Motion
             For Summary Judgment, Counter Motion
21           For Summary Judgment, Motion To
             Compel Turnover By Custodian And
22           For An Accounting  . . . . . . . . .  8

23  02/11/08     Notice of Appeal To District Court . .  9

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXCERPT OF RECORD 1**

CRAIG A. BURNETT, ESQ. ID. #118907
LAW OFFICES OF C. BURNETT
537 FOURTH STREET, SUITE A
SANTA ROSA, CALIFORNIA 95401
Telephone: (707) 523-3328
Email: burnett@sonic.net

Attorney for Defendant

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re:** ) | Case No.  07-10865 |
| ) | Chapter   11 |
| SHANNON FALK, ) | |
| ) | A.P. No.   07-1080 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| SHANNON FALK, ) | ANSWER TO COMPLAINT FOR DECLARATORY |
| ) | RELIEF, TURNOVER OF PROPERTY OF THE |
| Plaintiff, ) | ESTATE, INJUNCTIVE RELIEF; PROOF OF |
| vs. ) | SERVICE BY MAIL |
| ) | |
| MICHAEL FALK, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

MICHAEL T. FALK, defendant herein, by and through Craig A. Burnett, Esq., his attorney of record in this action, answer the complaint of SHANNON FALK (hereinafter "Plaintiff"), as follows:

1. Defendant admits the allegations contained in Paragraph one of said complaint.

2. Defendant admits the allegations contained in Paragraph two of said complaint.

3. Defendant admits the allegations contained in Paragraph three of said complaint insofar as the Michael T. and Shannon M. Falk Marital Trust was established, the exact date of which is unknown to defendant at this time. Except as so expressly admitted, defendant denies the remaining allegations contained in said paragraph based on lack of information and/or belief.

4. Defendant admits the allegations contained in Paragraph four of said complaint insofar as a transfer of the New York Limited Partnerships interest was made for estate planning purposes only, and for no other reason. Except as so expressly admitted, defendant denies the remaining allegations contained in said paragraph based on lack of information and/or belief.

5. Defendant admits the allegations contained in Paragraph five of said complaint.

6. Defendant admits the allegations contained in Paragraph six of said complaint.

7. Defendant denies each and every allegation contained in Paragraph seven of said complaint.

8. Defendant denies each and every allegation contained in Paragraph eight of said complaint.

9. Defendant admits the allegations contained in Paragraph nine of said complaint.

10. As to Paragraph ten of said complaint, defendant admits that a portion of the distributions from the New York Limited Partnerships interest were used to pay community debts and obligations. Except as so expressly admitted, defendant denies the remaining allegations contained in said paragraph based on lack of information and/or belief.

11. Defendant denies the allegations contained in Paragraph 11 of said complaint insofar as the New York Partnership interests are the sole and separate property of defendant, and therefore no such determination to the contrary is required.

12. Defendant denies each and every allegation contained in Paragraph twelve of said complaint.

13. Defendant denies each and every allegation contained in Paragraph thirteen of said complaint.

14. Defendant denies each and every allegation contained in Paragraph fourteen of said complaint.

15. Defendant denies each and every allegation contained in Paragraph fifteen of said complaint.

16. Defendant denies each and every allegation contained in Paragraph sixteen of said complaint.


AFFIRMATIVE DEFENSES

17. The complaint fails to state a cause of action upon which relief can be granted.

18. The complaint fails to satisfy the statutory requirements for transmutation under California Family Code Section 852 or any other subsection of Sections 850 through 853.

19. The New York Partnership agreements require the performance of specific conditions to effect a transfer of the interests, which if not met, make any purported transfer void on its face. These conditions were not met pursuant to the terms of the partnership agreements.

20. Other than transfer the New York Partnership interests into the marital trust for estate planning

purposes, no further statement, act or writing was made to change the ownership of said asset. Said asset was always referred to in all writings, including but not limited to all income tax returns, K-1 Schedules, and all other documents reflecting ownership of said interests, both before and after June 2, 2004, as the sole and separate property of defendant. Even plaintiff's Exhibits A and B make express reference to the fact that any separate property transferred into the marital trust retain its character as such after its transfer or withdrawal, see plaintiff's Exhibit A, paragraph 3. Plaintiff's Exhibit B specifically states that "any property, or interest in property, owned by either [party] before [the] marriage or acquired by either [party] at any time by gift or inheritance and that is registered or otherwise held in either . . . name alone or that is designated as separate property under [the] Trust is the separate property of that spouse."

21. Plaintiff is barred by the doctrine of estoppel from the recovery she seeks in said complaint.

22. Plaintiff has waived her right to any recovery she seeks in said complaint.

23. Plaintiff's position in this complaint is not substantially justified, and the defendant is entitled to the costs of, and a reasonable attorney's fee for this proceeding.

WHEREFORE, Defendant requests:

1. That said complaint be dismissed;

2. That plaintiff take nothing by complaint;

3. That Defendants be awarded reasonable attorney's fees and costs incurred herein; and

4. For such other and further relief as the Court deems just.

Dated: 11/13/07                              /S/ Craig A. Burnett_____
                                             Craig A. Burnett, Esq., Attorney for Defendant
                                             Calif. State Bar No. 118907

1
2
3

## PROOF OF SERVICE BY MAIL

4
5

       I declare that: I am employed in the County of Sonoma. I am over the age of eighteen years and not a party to the within action; my business address is 537 Fourth Street, Suite A, Santa Rosa, California 95401.

6

      On **November 13, 2007,** I served the within:

7

### ANSWER TO COMPLAINT

8
9

in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Santa Rosa, California, addressed as follows:

10
11
12

David N. Chandler, Esq.           U.S. Trustee
1747 Fourth Street                235 Pine Street, Suite 700
Santa Rosa, CA 95404              San Francisco, CA 94104

13
14

I declare under penalty of perjury that the foregoing is true and correct.

15

Executed on **November 13, 2007,** at Santa Rosa, California.

16
17

      /S/ Kateri T. Turner
      Kateri T. Turner

18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15      **EXCERPT OF RECORD 2**
16
17
18
19
20
21
22
23
24
25
26
27
28

David N. Chandler, Sr.   SBN 60780
David N. Chandler, Jr.   SBN 235427
DAVID N. CHANDLER, p.c.
1747 Fourth Street
Santa Rosa, CA  95404
Telephone: (707) 528-4331

Attorneys for Plaintiff

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE:                          CASE NO. 07-10865

SHANNON FALK,                   CHAPTER 11

_____Debtor._____/

SHANNON FALK,                   A.P. No. 07-1080

    Plaintiff,

v.                              MOTION FOR SUMMARY JUDGMENT,
                                DECLARATIONS OF SHANNON FALK,
MICHAEL FALK,                   AND DAVID N. CHANDLER,
                                MEMORANDUM OF POINTS AND
____Defendant._____/       AUTHORITIES_____
                                Date:  December 21, 2007
                                Time:  9:00 a.m.
                                Place: 99 South E St.
                                       Santa Rosa, CA

    TO: HONORABLE ALAN JAROSLOVSKY, UNITED STATES BANKRUPTCY

JUDGE:

    Shannon Falk, Plaintiff herein, by and through counsel, hereby

moves the above entitled Court for an Order Granting Summary

Judgment.

    Said Motion is made on the grounds that the Declarations and

testimony of the Defendant establish that there is no triable issue

of fact and that the Plaintiff is entitled to judgment as a matter

of law.

    Said Motion is made and based hereon, on the appended

1

Declarations of Shannon Falk, David N. Chandler and Rob Disharoon

and on the Memorandum of Points and Authorities appended hereto.

Dated:    11/21/07                    DAVID N. CHANDLER, p.c.


                                      By: /s/ David N. Chandler
                                      DAVID N. CHANDLER,
                                      Attorney for Plaintiff


                    DECLARATION OF SHANNON FALK

     I, Shannon Falk, declare and say:

     1.    That if called as a witness, I am competent to testify to

the within matters from my own knowledge.

     2.    That I am the Plaintiff in the above captioned Adversary

Proceeding and the Debtor in the within Chapter 11 case.

     3.    On or about June 2, 2004, Defendant and I entered into a

Property Agreement, Exhibit A hereto and the Restated 1994 Michael

and Shannon Falk Trust, Exhibit B hereto.

     4.    Pursuant to the terms of the Trust (Exhibit B), Defendant

and I transferred the property described in the Property Agreement

(Exhibit A) to the Trust by assignments including Exhibit C hereto.

     5.    The said Property Agreement was intended and did provide

for transmutation of the property described therein which has

theretofore been the separate property of either one of us to

community property.  It was our stated intention to so transmute

the subject property.

     6.    The Trust (Exhibit B) provides that the property set

forth in the Schedules is Community property.

     7.    The limited partnership interests or "N.Y. partnerships",

along with the other properties described in the Property

2

1    Agreement, Exhibit B, were, in fact transferred to the Trust.  The

2    real properties were transferred by Deed executed, acknowledged and

3    recorded.   The "N.Y. Partnerships were transferred by Exhibit C

4    hereto, executed by Defendant and delivered to the Trustees of the

5    Trust.

6         8.    Rob Disharoon of Anderson, Ziegler, Disharoon, Gallagher

7    & Gray prepared the Restated 1994 Trust of Michael and Shannon

8    Falk, the Property Agreement, the Deeds and Exhibit C for the

9    express and stated purpose of transmuting the properties described

10   in the Property Agreement to community property and placing said

11   community property in trust for our mutual benefit as well as the

12   benefit of our child.  Mr. Disharoon consulted with the two of us

13   extensively regarding the transfer and transmutation of the

14   property and we both stated our intentions in his presence.

15        Executed under penalty of perjury this 21st day of November,

16   2007 at Santa Rosa, California.

17                                        _/s/Shannon Falk_
                                         SHANNON FALK
18

19              DECLARATION OF DAVID N. CHANDLER

20        I, David N. Chandler, declare and say:

21        1.    That if called as a witness, I am competent to testify to

22   the within matters from my own knowledge.

23        2.    I am the attorney for the Plaintiff herein and the Debtor

24   in the within Chapter 11 case.

25        3.    As counsel for the Debtor, I conducted an examination of

26   the Defendant pursuant to F.R.B.P Rule 2004 on August 28, 2007 and

27   September 12, 2007.

28        4.    Attached hereto as Exhibit D are true and correct copies

3

1  of excerpts of the transcript of the examination of Michael Falk.

2     5.   Mr. Falk testified to the following:

3        a.   That he executed the Amendment in its entirety to

4  the Michael and Shannon Falk Trust (Exhibit 1 to Deposition),

5  Exhibit B herein [Vol I, p. 45, lines 2-4].

6        b.   That he understood the assets described in Exhibit

7  A to Deposition Exhibit 1 (Exhibit B herein) to contain a list of

8  assets transferred to the Michael and Shannon Falk Trust [Vol I, p.

9  45, line 25, pg. 46, lines 1-7].

10       c.   That the New York Limited Partnership interests were

11 transferred to the Trust [Vol I, p. 46, line 25, p. 47, lines 1-

12 22].

13       d.   That Michael Falk has collected the income from the

14 New York Partnerships and applied a portion thereof to support

15 payments to Plaintiff [Vol II, p.123, lines 8-16].

16    Executed under penalty of perjury this 21st day of November,

17 2007 at Santa Rosa, California.

18                                    /s/David N. Chandler
                                     David N. Chandler
19                                   Attorney for Plaintiff

20

21            MEMORANDUM OF POINTS AND AUTHORITIES

22    Plaintiff submits the following Memorandum of Points and

23 Authorities in support of her Motion for Summary Judgment:

24    1.   Rule 56 of the Federal Rules of Civil Procedure,

25 applicable to adversary proceedings by virtue of Rule 7056 provides

26 for summary adjudication of issues:

27        **(c) Motion and Proceedings Thereon** . . . . The judgment

28 sought shall be rendered forthwith if the pleadings, depositions,

4

1    answers to interrogatories, and admissions on file, together with
2    the affidavits, if any, show that there is no genuine issue as to
3    any material fact and that the moving party is entitled to judgment
4    as a matter of law . . . .

5        2.   "A material fact is one that is relevant to an element of
6    a claim or defense and whose existence might affect the outcome of
7    the suit.   The materiality of a fact is thus determined by
8    substantive law governing the claim or defense." <u>T.W. Elec. Serv.</u>
9    <u>v. Pac. Elec. Constractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

10       3.   Genuine issues of material fact are those factual issues
11   that make a difference to the potential outcome and that properly
12   can be resolved only by a finder of fact because they may
13   reasonably be resolved in favor of either party.   <u>Svob. v. Bryan</u>
14   <u>(In re Bryan)</u>, 261 B.R. 240, 243 (9th Cir. BAP 2001).   An issue of
15   material fact is genuine if the evidence is such that a reasonable
16   jury could return a verdict for the nonmoving party.   <u>Anderson v.</u>
17   <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

18       4.   Separate property of either spouse can be transmuted to
19   community property with or without consideration.   Fam. Law Code
20   Section 850.   A transmutation of real or personal property is not
21   valid unless made in writing by and express declaration that is
22   made, join in, consented to, or accepted by the spouse whose
23   interest in the property is adversely affected.   Fam. Law Code
24   Section 851.   A statement in a will as to the character of party is
25   not admissible as evidence of a transmutation.   Fam. Law. Code
26   Section 853(a).   A written joinder or consent to a nonprobate
27   transfer of community property on death that satisfies Fam. Law
28   Code Section 852(a) is a transmutation.

5

1    5.   The Property Agreement is admissible evidence of the

2    parties' transmutation to community of the New York Limited

3    Partnership interests.

4    6.   The document must contain "an express declaration" by

5    which transmutations are made.  In re Marriage of MacDonald, (1990)

6    51 C.3d 262, 267-268.  A transmutation must be both written and

7    express, but need not contain any specific language.  See,

8    MacDonald, supra., p. 273.  The specific words, "transmutation",

9    "community property", and/or "separate property" may, but need not

10   appear in the writing.  Supra., p. 273.

11   7.   The Property Agreement, Exhibit A, executed by the

12   Defendant, provides "we declare that all property owned by us on

13   the date of this Agreement, or hereafter acquired by us, title to

14   which is held (i) in both of our names, including property held in

15   joint tenancy form, or (ii) titled in the MICHAEL T. AND SHANNON M.

16   FALK MARITAL TRUST dated December 1, 2001, (unless specifically

17   designated as the separate property of either of us), is our

18   community property."

19   8.   Exhibit "A" to the December 1, 2001 MICHAEL T. AND

20   SHANNON M. FALK MARITAL TRUST, item 6 describes the New York

21   partnership interests as Community Property and property of the

22   said Trust.

23   9.   The partnership interests were formally transferred to

24   the Trust by Exhibit C hereto.

25   10.  There can be no question of the parties' express

26   declaration in Exhibit A hereto that the property of the Trust is

27   community property and that the New York Partnership interests

28   were, in fact property of the Trust by express assignment.

6

1

2   Dated:     11/21/07                    Respectfully submitted,
                                          DAVID N. CHANDLER, p.c.
3

4
                                          By: /s/ David N. Chandler
5                                         DAVID N. CHANDLER,
                                          Attorney for Plaintiff
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

## PROPERTY AGREEMENT

1.    Except as otherwise provided in this Agreement, we declare that all property owned by us on the date of this Agreement, or hereafter acquired by us, title to which is held (i) in both of our names, including property held in joint tenancy form, or (ii) titled in the MICHAEL T. AND SHANNON M. FALK MARITAL TRUST dated December 1, 2001, (unless specifically designated as the separate property of either of us), is our community property. We hereby agree to change the character of any such joint property to community property if it is not already titled as community property.

2.    We declare that any property, or interest in property, owned by either of us before our marriage or acquired by either of us at any time by gift or inheritance and that is registered or otherwise held in either of our names alone or that is designated as separate property under our Trust is the separate property of that spouse.

3.    It is the purpose of this Agreement and our intent that, upon the death of either of us, the character of the above-described property shall be determined by this Agreement.

DATED:    6/2/04

_____
MICHAEL T. FALK

_____
SHANNON M. FALK

STATE OF CALIFORNIA )
                                        ) ss.
COUNTY OF SONOMA  )

On 6/2/04 , before me, the undersigned notary public, personally appeared MICHAEL T. FALK and SHANNON M. FALK, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same in their authorized capacities and that by their signatures on the instrument the persons or the entity upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal.



ROBERT DISHAROON
COMM. 1328811
NOTARY PUBLIC CALIFORNIA
SONOMA COUNTY
My Comm. Expires Dec. 3, 2005

EXHIBIT "_A_"

# AMENDMENT IN ITS ENTIRETY

## TO THE

### MICHAEL T. AND SHANNON M. FALK

### MARITAL TRUST

This Amendment in its Entirety to the MICHAEL T. AND SHANNON M. FALK MARITAL TRUST is entered into by and between MICHAEL T. FALK and SHANNON M. FALK (the "Grantors") and MICHAEL T. FALK and SHANNON M. FALK (the "Trustees"). The MICHAEL T. AND SHANNON M. FALK MARITAL TRUST, dated December 1, 2001, is hereby amended in its entirety as follows:

### ARTICLE I

### TRUST ESTATE

A.    Name of Trust. This trust shall be known as THE MICHAEL T. AND SHANNON M. FALK MARITAL TRUST.

B.    Identity of Trust Estate. The Grantors have transferred and conveyed to the Trustees the property described on Exhibit "A" to this Agreement. Such property, and any other property hereafter transferred to the Trustees, shall be managed and distributed in accordance with the provisions of this Agreement.

C.    Character of Trust Property. Any property transferred to or withdrawn from the trust shall retain its character as community property or separate property after its transfer or withdrawal. The Grantors and the Trustees agree that the Trustees shall retain and have only such powers with respect to the community property of the

EXHIBIT " B "

Grantors as, under California law, are consistent with such property of the Grantors contributed to the trust being and remaining their community property.

D.    Power to Amend Trust. At any time during their joint lives, the Grantors, acting jointly, shall have the power to amend this Agreement with respect to their community property, in whole or in part, by a writing. Either Grantor, acting alone, shall have the power at any time to amend this Agreement with respect to his or her separate property by a writing. Upon the death of the first Grantor to die, the Exemption Trust and the Marital Trust (as defined in Article III) shall become irrevocable and may not be amended by the surviving Grantor. The surviving Grantor may amend the Surviving Grantor's Trust (as defined in Article III), in whole or in part, by a writing.

E.    Power to Revoke Trust. Subject to the provisions of this Article I, either of the Grantors shall have the power with respect to his or her separate property and his or her interest in their community property, at any time during their joint lifetimes, to revoke this Agreement in whole or in part by a writing. In order for a revocation to be effective with respect to community property, a copy of the revoking instrument shall be delivered to the other Grantor or sent by mail, postage pre-paid, to the other Grantor's last known address. On revocation with respect to community property, the Trustees shall promptly deliver to the Grantors all or the designated portion of such property which shall continue to be the community property of the Grantors. Upon the death of the first Grantor to die, the Exemption Trust and the Marital Trust (as defined in Article III) shall become irrevocable, but the surviving Grantor may revoke the Surviving Grantor's Trust (as defined in Article III), in whole or in part, by a writing.

2

F.  <u>Right to Withdraw Assets.</u> Either of the Grantors shall have the right to withdraw all or any part of his or her separate property, and all or any part of the community property, at any time during their joint lives by delivering a written request to the Trustees. In the case of a withdrawal of community property, a copy of the request for withdrawal shall be delivered to the other Grantor or sent by mail, postage pre-paid, to the other Grantor's last known address. At any time after the death of the first Grantor to die, the surviving Grantor shall have the right to withdraw all or any part of the Surviving Grantor's Trust (as defined by Article III) by delivering a written request to the Trustees, except that such requests need not be in writing so long as either Grantor is acting as Trustee.

ARTICLE II

DISTRIBUTIONS DURING JOINT LIVES OF GRANTORS

A.  <u>Distribution of Income.</u> So long as both Grantors are living, the Trustees shall pay to or apply for the benefit of the Grantors the entire net income of the community property assets of the trust estate, quarter-annually or in more frequent installments. The net income of any separate property shall be paid to or applied for the benefit of the Grantor who transferred such separate property to the trust.

B.  <u>Distribution of Principal.</u> The Trustees are authorized, at any time and from time to time, to pay to or apply for the benefit of the Grantors, or either of them, such part or all of the principal of the community property assets of the trust as the Trustees shall determine is reasonably necessary or appropriate for the care and happiness of the Grantors, or either of them. If either Grantor transfers his or her separate property to the trust, the Trustees shall pay to or apply for the benefit of the

3

Grantor who transferred such separate property all or part of the principal of such separate property as he or she shall request or as the Trustees shall determine is reasonably necessary or appropriate for the care and happiness of such Grantor.

## ARTICLE III

### DIVISION OF TRUST ESTATE UPON FIRST DEATH

Upon the death of the first Grantor to die, the Trustee shall divide the trust estate, including any property received by the Trustee on or by reason of the deceased Grantor's death, into three (3) separate trusts, referred to as the "Surviving Grantor's Trust", the "Exemption Trust" and the "Marital Trust", as follows:

A.    <u>Surviving Grantor's Trust</u>. The Surviving Grantor's Trust shall consist of the surviving Grantor's separate property, if any, and the surviving Grantor's share of the community property of the Grantors subject to the terms of this Agreement.

B.    <u>Exemption Trust</u>. The Exemption Trust shall consist of a sum equal to the largest amount of the deceased Grantor's property that can pass exempt of federal estate tax by reason of the unified credit allowable in the estate of the first Grantor to die pursuant to Section 2010 of the Internal Revenue Code (or any substitute provision) and the state death tax credit allowable at the time of death of the first Grantor to die pursuant to Section 2011 of the Internal Revenue Code (or any substitute provision), after taking into account the value of all property passing under other provisions of this Agreement or outside of the provisions of this Agreement that is included in the deceased Grantor's taxable estate and that does not qualify for the federal estate tax marital deduction or the federal estate tax charitable deduction, and after taking into account the amount of all expenses of administering the deceased Grantor's estate and

4

any other charges to estate principal that are not allowed as deductions or credits in computing the federal estate tax.

C.    _Marital Trust._  The Marital Trust shall consist of the remainder of the deceased Grantor's assets subject to the terms of this Agreement.

D.    _Funding of Trusts._  All trusts may be funded in cash or in kind, or partly in each. However, the Marital Trust shall be funded only with assets includible in the deceased Grantor's gross estate and eligible for the Federal Estate Tax Marital Deduction. Assets allocated in kind to the Marital Trust shall be valued either at their values on the date of distribution to the trust or at their final Federal Estate Tax values. If final Federal Estate Tax values are used, assets allocated in kind shall be fairly representative of appreciation or depreciation in value of all assets available for distribution.

## ARTICLE IV

## SURVIVING GRANTOR'S TRUST

All of the assets allocated to the Surviving Grantor's Trust shall be held by the Trustee in further trust and the income and principal thereof shall be disposed of as follows:

A.    _Distribution of Income._  The entire net income of the Surviving Grantor's Trust shall be paid to or applied for the benefit of the surviving Grantor, quarter-annually or in more frequent installments.

B.    _Distribution of Principal._  The Trustee is authorized, at any time and from time to time, to pay to or apply for the benefit of the surviving Grantor such part or all

5

of the principal of the Surviving Grantor's Trust as the Trustee shall determine to be reasonably necessary or appropriate for the care and happiness of the surviving Grantor.

C.    General Power of Appointment.  On the death of the surviving Grantor, the principal of the Surviving Grantor's Trust, together with any accrued income, shall be distributed to or for the use of such one or more persons or entities, including the estate of the surviving Grantor, outright or in further trust, and in such proportions and subject to such terms and conditions, as the surviving Grantor shall appoint by Will, it being the intention of the Grantors to vest in the surviving Grantor a general and unrestricted testamentary power of appointment exercisable in all events by him or her alone.  This power of appointment shall be exercisable only by specific reference thereto in the Will of the surviving Grantor and shall not be deemed to have been exercised by any general residuary article contained therein.

D.    Lapse of Power of Appointment.  To the extent that the surviving Grantor shall fail effectively to exercise the foregoing power of appointment, the remaining balance of the Surviving Grantor's Trust, or the portion not so appointed, shall be managed and distributed as provided in Article VII of this Agreement.

ARTICLE V

EXEMPTION TRUST

All of the assets allocated to the Exemption Trust shall be held by the Trustee in further trust and the income and principal thereof shall be disposed of as follows:

A.    Distribution of Income.  The entire net income of the Exemption Trust shall be paid to or applied for the benefit of the surviving Grantor, quarter-annually or in more frequent installments.

6

B.    Distribution of Principal. The Trustee is authorized, at any time and from time to time, to pay to or apply for the benefit of the surviving Grantor such part or all of the principal of the Exemption Trust as shall be reasonably necessary for the support, health and maintenance of the surviving Grantor, taking into consideration any other income or assets known to the Trustee and reasonably available to the surviving Grantor for such purposes, including the Surviving Grantor's Trust and the Marital Trust; provided that, to the extent practicable, the Trustee is encouraged to make payments of principal first from the Surviving Grantor's Trust until it is exhausted, and thereafter from the Marital Trust, and finally from the Exemption Trust only if both the Surviving Grantor's Trust and the Marital Trust have been exhausted.

C.    Special Power of Appointment. On the death of the surviving Grantor, the remaining balance of the Exemption Trust shall be distributed to such of either Grantor's issue outright or in further trust and in such proportions and subject to such terms and conditions as the surviving Grantor shall appoint by Will; provided, however, in no event shall he or she appoint any of the property subject to this power of appointment in favor of the surviving Grantor, the surviving Grantor's estate, the surviving Grantor's creditors, or the creditors of the surviving Grantor's estate. This special power of appointment shall be exercisable only by specific reference thereto in the Will of the surviving Grantor and shall not be deemed to have been exercised by any general residuary article contained therein.

D.    Lapse of Power of Appointment. To the extent that the surviving Grantor shall fail effectively to exercise the foregoing power of appointment, the remaining

7

U4/12/2UU1  12.UU FAA  101 100 UU01        ANDERSUNZEIBLERUISHARUUN                010/039

balance of the Exemption Trust shall be managed and distributed as provided in Article VII of this Agreement.

## ARTICLE VI

## MARITAL TRUST

All of the assets allocated to the Marital Trust shall be held by the Trustee in further trust and the income and principal thereof shall be disposed of as follows:

A.    <u>Distribution of Income</u>.  The entire net income of the Marital Trust shall be paid to or applied for the benefit of the surviving Grantor, quarter-annually or in more frequent installments.  All accrued and undistributed income at the death of the surviving Grantor shall be paid to the surviving Grantor's estate.

B.    <u>Distribution of Principal</u>.  The Trustee is authorized, at any time and from time to time, to pay to or apply for the benefit of the surviving Grantor such part or all of the principal of the Marital Trust as the Trustee shall deem reasonably necessary for the support, health and maintenance of the surviving Grantor, taking into consideration any other income or assets known to the Trustee and reasonably available to the surviving Grantor for such purposes, including the Surviving Grantor's Trust.

C.    <u>Special Power of Appointment</u>.  On the death of the surviving Grantor, the remaining balance of the Marital Trust shall be distributed to such of either Grantor's issue outright or in further trust and in such proportions and subject to such terms and conditions as the surviving Grantor shall appoint by Will; provided, however, in no event shall he or she appoint any of the property subject to this power of appointment in favor of the surviving Grantor, the surviving Grantor's estate, the surviving Grantor's creditors, or the creditors of the surviving Grantor's estate.  This special power of

appointment shall be exercisable only by specific reference thereto in the Will of the surviving Grantor and shall not be deemed to have been exercised by any general residuary article contained therein.

D.    Lapse of Power of Appointment. To the extent that the surviving Grantor shall fail effectively to exercise the foregoing power of appointment, the remaining balance of the Marital Trust shall be managed and distributed as provided in Article VII below.

## ARTICLE VII

## DISTRIBUTION OF TRUST ESTATE ON DEATH OF SURVIVING GRANTOR

On the death of the surviving Grantor, and to the extent not otherwise appointed by the surviving Grantor, the Trustees shall divide the trust estate into as many equal shares as there are children of the Grantors then living (such children are defined to include JONATHAN SAMUEL BARRY FALK, WM. MAXWELL FALK and ZOE ELIZABETH FALK) and any of such children of the Grantors then deceased with issue then living. The Trustees shall allocate one equal share to each such then living child of the Grantors and one equal share to each group composed of the then living issue of such deceased child of the Grantors. Each such share shall be distributed or retained in trust as follows:

A.    Issued of Deceased Children. Each share allocated to a group composed of the living issue of a deceased child of the Grantors shall be distributed to such issue by right of representation, subject to the provisions of Article XI below if they are under age twenty-five (25).

04/12/2007  12.08 FAX  101 163 0831    ANDERSONZEIGLERDISHAROON    ☑ 012/039

B.    Children Over Age Thirty-five (35).  If any child of the Grantors, including Grantor MICHAEL T. FALK'S son, JONATHAN SAMUEL BARRY FALK, ("such child") is then over the age of thirty-five (35) years, his or her share of the trust estate shall be distributed to him or her (subject to satisfying the conditions provided in subparagraph C(3)(b) below as determined by the Trustees in the Trustees' absolute discretion)..

C.    Children Under Age Thirty-five (35).  If such child is then under the age of thirty-five (35) years, the trust estate shall be held, administered, and distributed by the Trustees, hereafter named, as follows:

1.    Trust Income and Principal.  The Trustees shall pay to or apply for the benefit of such child so much of the net income and principal from his or her trust as the Trustees deem necessary or advisable for such child's support, maintenance, health and education (including college and professional education).  However, the Grantors intend that trust funds shall not be used for such child's daily upkeep and maintenance expenses, except in extraordinary situations.  Any income not so distributed shall be accumulated and added to the principal of such child's trust.

2.    Distribution.  The trust estate shall be distributed to such child when he or she attains the age of thirty-five (35) subject to the provisions of the following subparagraph 3 regarding completion of education, drug and alcohol abuse, or inability to handle his or her own personal or financial affairs.

3.    Conditions of Distribution to Such Child.  If such child has completed a four year college degree program, and subject to the restrictions set forth in

ANDERSONELIOECROISANNOON    012/030

the following subparagraph 3(b), the trust estate shall be distributed to such child as follows:

       a.    When such child graduates, the Trustees shall distribute to him or her Twenty-five Percent (25%) of the then balance of the principal of such trust estate; when such child attains the age of twenty-eight (28) years, the Trustees shall distribute to him or her Fifty Percent (50%) of the then balance of the principal of such trust estate; and when such child attains the age of thirty-five (35) years, the Trustees shall distribute to him or her all of the then balance of such trust estate. If such child has completed such college degree program and attained one or more of the specified birthdays by the date such child's trust is created, then he or she shall be entitled to distribution of Twenty-five Percent (25%) of such trust estate if he or she has then graduated, Fifty Percent (50%) of such trust estate if he or she has then attained his or her twenty-eighth (28th) birthday, and the whole thereof if he or she has then attained his or her thirty-fifth (35th) birthday.

       b.    If such child is, in the absolute discretion of the Trustees, unfit due to drug or alcohol abuse to handle his or her own financial affairs, or if he or she has not completed his or her high school education, or if her or she has not dealt with any unresolved legal issues affecting him or her, then the Trustees may withhold any disbursements otherwise due to him or her at any time. If by age thirty-five (35), the Trustees still believe such child is unfit due to drug or alcohol abuse to handle his or her own financial affairs, then the Trustees shall hold in further trust, subject to the terms of subparagraph C(1)(a) of this Article VII, Fifty Percent (50%) of the trust until such child reaches age forty-five (45) at which time the Trustees shall distribute Fifty

Percent (50%) of such child's trust to such child and the remaining Fifty Percent (50%) of such trust, in equal shares, to the AMERICAN CANCER SOCIETY and the DRUG ABUSE ALTERNATIVE CENTER.

      c.    If such child dies before distribution to him or her of his or her trust, the undistributed balance of such child's trust shall thereupon be distributed to his or her then living issue, by right of representation, or if there are none, then to the Grantors' then living issue, by right of representation; provided that if a share of any such person is then held in trust hereunder, the portion to which such person is entitled shall be added to that trust, to follow the disposition of that trust in all respects.

## ARTICLE VIII

## ALTERNATE DISTRIBUTION

If at any time before termination of each of the trusts created under this Agreement both of the Grantors shall be deceased without issue surviving, and provided that no other disposition is directed herein, then all of the remaining trust estate, or the portion for which no other disposition is directed, shall be distributed one-half (1/2) to the heirs at law of each Grantor, such heirs to be determined as if both Grantors had then died and according to the laws of the State of California then in effect relating to the intestate succession of separate property not acquired from a predeceased spouse.

## ARTICLE IX

## MARITAL PROVISIONS

A.    Intent to Qualify. If the Trustees, or the personal representative of the first Grantor to die, as the case may be, so elects, it is intended that the Marital Trust qualify for the marital deduction under Section 2056 of the Internal Revenue Code and the

12

regulations pertaining to that section or any corresponding or substitute provisions applicable to the estate of the first Grantor to die. In no event shall the Trustees or such personal representative take any action or have any powers that will impair the marital deduction, and all provisions regarding the Marital Trust shall be interpreted to conform to this primary objective if the Trustees or such personal representative elect to qualify the Marital Trust for the marital deduction. No provision of this Agreement shall be deemed to limit the right of the surviving Grantor to receive currently the entire net income from the Marital Trust. No fact, including the availability of any credit or deduction, shall be taken into account in determining the amount of the Marital Trust if taking such credit or deduction into account would cause a disallowance of the Marital Trust for such marital deduction purposes; in such case, the determination of the amount of the Marital Trust shall be made as though any such fact had not occurred and any such credit or deduction were not available.

B.    <u>Primary Purpose</u>. In addition, in making such election the Trustees or such personal representative, as the case may be, should consider that it is the Grantors' intent to provide primarily for the surviving Grantor. The Trustees' or personal representative's decision shall be final and binding as to all beneficiaries.

ARTICLE X

TRUSTEE POWERS

To carry out the purposes of any trust subject to this Agreement, and subject to any limitations stated elsewhere in this Agreement, the Trustees shall exercise all rights and perform all acts that are necessary or advisable in the prudent management of the trust estate. The Trustees are vested with the following powers with respect to the trust

13

estate, in addition to all of those powers enumerated in California Probate Code Sections 16200-16249, as amended from time to time:

A.    Operate Business.   To operate at the risk of the trust estate any business or other enterprise that the Trustees receive or acquire under the trust, or to sell or liquidate such property or business, provided that if the surviving Grantor so directs in writing, the Trustees shall make all or part of the principal of the Marital Trust productive, or promptly convert any unproductive part of the Marital Trust into productive property;

B.    Loans and Guarantees.   To make loans, either secured or unsecured, including loans to the estates of the Grantors; to borrow, and to encumber or hypothecate trust property by mortgage, deed of trust, pledge, or otherwise, for the debts of the trust or the joint debts of the trust and a co-owner of trust property, and to obligate, encumber, or guarantee the trust or trust estate or execute on behalf of the trust a guarantee for loans to (i) any Grantor, or (ii) a corporation whose stock is owned by this trust or by any Grantor, or (iii) a partnership in which a Grantor or the trust is a partner;

C.    Securities.   To buy, sell and trade in securities of any nature, including short sales, puts, calls, and other options, covered and uncovered, of any kind or nature, on margin, and for such purposes, to maintain and operate margin accounts with brokers, and to pledge any securities;

D.    Manner of Holding Title.   While either Grantor is acting as a Trustee, to hold any property in their names without designation as Trustees or in the name of a nominee or in another form without disclosure of the trust;

14

E.    Rights and Options.    To exercise or dispose of any or all options, privileges or rights;

F.    Foreclosure.    To foreclose mortgages and to exercise powers of sale under deeds of trust and to consent to the modification, renewal or extension of any note, bond, deed of trust or mortgage;

G.    Contracts and Options.    To enter into contracts or grant options at such times, in such manner and upon such terms and conditions, as the Trustees shall deem advisable in connection with the exercise of any of the rights, powers, duties, authority and privileges given to it by this Agreement;

H.    Reconveyance.    To reconvey, and to execute and deliver requests for reconveyance of, any deed of trust or mortgage upon full satisfaction of all indebtedness secured by such deed of trust or mortgage, and to partially reconvey any deed of trust or mortgage upon compliance with the terms of a prior agreement;

I.    Real Property.    To buy, sell, acquire, exchange and dispose of real property of every kind, including undivided interests therein, improved or unimproved, for cash or credit;

J.    Exchange Community Property Interests.    To exchange or allocate a deceased Grantor's community property interest in a particular asset with or to the surviving Grantor's community property interest in the same or other property, provided that such exchange is done and such allocation is made at equal values;

K.    Investment Manager.    The Trustees are authorized to employ attorneys, accountants, investment advisors, specialists, and such other agents as the Trustees shall deem necessary or desirable.    The Trustees shall have the authority to appoint an

15

investment manager or managers to manage all or any part of the assets of the trust and to delegate to said manager investment discretion. Such appointment shall include the power to acquire and dispose of such assets. The Trustees may charge the compensation and expenses of such attorneys, accountants, investment advisors, investment managers, specialists, and other agents against the trust.

## ARTICLE XI

## CUSTODIANSHIP ACCOUNTS

If any person who is a beneficiary under this Agreement is under the age of twenty-five (25) years at the time title vests in him or her, and a trust is not otherwise provided for such person, then his or her share shall be retained by an individual selected by the Trustees as custodian for such person until age twenty-five (25) under the California Uniform Transfers to Minors Act.

## ARTICLE XII

## DISINHERITANCE AND NO CONTEST PROVISIONS

A.     Disinheritance. Except as otherwise provided in this Trust Agreement, the Grantors have intentionally made no provision for any child of the Grantors, or of either Grantor, or for the issue of any deceased child of the Grantors, or of either Grantor, or for any other person or relative, whether claiming to be an heir of the Grantors, or either of them, or not.

B.     No Contest Provision. If any beneficiary under this Trust Agreement ("Trust"), or any legal heir of the Grantors or any person claiming under any of them shall contest this Trust, or shall seek to impair or invalidate any of the provisions of this Trust, or shall conspire with or voluntarily assist anyone attempting to do any of those

16.

things, then in that event the Grantors specifically disinherit such contesting person and all interests given to such contesting person under this Trust shall be forfeited and shall be disposed of in the same manner provided in the Trust, as if that contesting person had predeceased the Grantors. The Trustees are authorized to defend any contest against this Trust Agreement or any of its provisions, and to pay the expenses of the defense from the trust estate.

### ARTICLE XIII

### MISCELLANEOUS PROVISIONS

A.    <u>Payment of Expenses</u>.    Notwithstanding any other provision in this Agreement, upon the death of either Grantor, the Trustees may, in the Trustees' discretion, pay the deceased Grantor's last illness and funeral expenses, attorney's fees and other fees and costs incurred in administering the deceased Grantor's estate, and other obligations incurred for the deceased Grantor's support. In the case of the death of the first Grantor to die, such fees and expenses shall be paid out of the property contributed by the deceased Grantor. In the case of the death of the surviving Grantor, such fees and expenses shall be paid out of the Surviving Grantor's Trust, or if the Surviving Grantor's Trust is entirely exhausted, then out of the Marital Trust.

B.    <u>Notice of Birth or Death</u>.    Until the Trustees have received notice of any birth, death or other event upon which the right to receive payment from the trust estate might depend, the Trustees shall incur no liability for payments or distributions of principal or income made in good faith to any person whose interest may have been affected by that event.

17

C.    <u>Spendthrift Provision</u>. No interest in the principal or income of any trust created under this Agreement shall be anticipated, assigned or encumbered, or subject to any creditor's claim or to legal process, prior to its actual receipt by the beneficiary.

D.    <u>Separate Accounts</u>. There need be no physical segregation or division of the various trusts except as segregation or division may be required by the termination of any of the trusts, but the Trustees shall keep separate accounts for the different undivided interests.

E.    <u>Rule Against Perpetuities</u>. Each trust created hereunder shall terminate in any and all events no later than twenty-one (21) years after the death of the last survivor of the beneficiaries of the trusts created hereunder who are living at the time of the execution of this Agreement, it being the intent of the Grantors that this Agreement be interpreted so as not to violate the rule against perpetuities. All principal and undistributed income of any trust so terminated shall be distributed to the then income beneficiaries of that trust in the proportions in which they are, at the time of termination, entitled to receive the income; provided, however, that if the rights to income are not then fixed by the terms of the trust, distribution under this clause shall be made, by right of representation, to such persons as are then entitled or authorized at the Trustees' discretion to receive income payments.

F.    <u>Definitions</u>. As used in this Agreement, "children" includes all legally adopted as well as biological children; and "issue" includes lawful descendants of all degrees, including adoptive descendants.

G.    <u>Applicable Law</u>. This Agreement is entered into in the State of California and its validity and construction shall be governed by the laws of the State of California.

## ARTICLE XIV

### TRUSTEE PROVISIONS

A.  Appointment of Trustees.  MICHAEL T. FALK and SHANNON M. FALK shall be the Trustees of any trust subject to this Agreement. If either of them fails, for any reason, to continue to act as Trustee, then the remaining one of them shall act as sole Trustee and, in addition, shall have the right to appoint a Co-Trustee to act with the surviving Grantor or a successor Trustee to act in the surviving Grantor's place. If the surviving Grantor so appoints a Co-Trustee or successor sole Trustee, the surviving Grantor shall retain the right to remove such appointed Trustee and replace that Trustee with another Co-Trustee or sole Trustee.

If both of them fail, for any reason, to continue to act as Trustees, and if the survivor of the two of them fails to appoint a successor Trustee, then in such event JASON B. WILLITS and WILLIAM G. WILLITS shall act as Co-Trustees, or the survivor of the two of them as sole Trustee. Each of JASON B. WILLITS and WILLIAM G. WILLITS shall have the right to appoint a successor to act in his place as Trustee.

B.  When Co-Trustee May Act Alone.  So long as MICHAEL T. FALK and SHANNON M. FALK are serving as Co-Trustees, the signature of only one Trustee shall be required on any bank or savings and loan account or brokerage account. Each Co-Trustee may delegate in writing to the other Co-Trustee his or her power to bind the trust or to exercise any of the powers of the Trustees that otherwise would require both Trustees to act together.

19

C.    Incapacity.    The incapacity of a Trustee, as may be established by the written certification of the Trustee's attending physician, shall be deemed a resignation of the Trustee as of the date of the certification.

D.    Acceptance by Successor Trustees.    The appointment and qualification of a successor Trustee shall be effective without any court proceeding or decree.    Each successor Trustee shall indicate acceptance of the trusteeship (i) by giving written notice of intention to accept the position of Trustee to the adult income beneficiary or beneficiaries of the trust or, if there are none, to the guardian or guardians of the minor income beneficiary or beneficiaries, and (ii) by giving a copy of the same notice to the resigning Trustee, if any.

E.    Bond.    No bond shall be required of any Trustee named in this Agreement.

IN WITNESS WHEREOF, the Grantors and Trustees have executed this Agreement on ___6/2/04___.

"GRANTORS"                                         "TRUSTEES"

_____             _____
MICHAEL T. FALK                                MICHAEL T. FALK

_____             _____
SHANNON M. FALK                               SHANNON M. FALK

20

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF SONOMA    )

On ___6/2/04___, before me, the undersigned notary public, personally appeared MICHAEL T. FALK and SHANNON M. FALK, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same in their authorized capacity and that by their signatures on the instrument the persons or the entity upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal.



MC11 | ROBERT DISHAROON
      COMM. 1328811
NOTARY PUBLIC CALIFORNIA
      SONOMA COUNTY
My Comm. Expires Dec. 3, 2005 | MC11

# EXHIBIT "A"

## COMMUNITY PROPERTY TRANSFERRED TO THE TRUST

1. Real property and improvements located at 7000 Malone Road, Forestville, California, Sonoma County Assessor's Parcel No. 078-020-051.

2. Real property and improvements located at 441 Tracy, Santa Rosa, California, Sonoma County Assessor's Parcel No. 035-460-008.

3. Real property and improvements located at 2570 Laguna Road, Santa Rosa, California, Sonoma County Assessor's Parcel No. 078-190-001.

4. Real property and improvements located at 2791 McBride Lane, #173, Santa Rosa, California, Sonoma County Assessor's Parcel No. 148-210-046.

5. Secured Promissory Note and Deed of Trust executed by Chris Johnson.

6. New York Limited Partnerships.

7. Grantor SHANNON M. FALK'S interest under the Willitts Children 1991 Irrevocable Trust dated December 25, 1991 (per SHANNON M. FALK'S exercise of her power of appointment).

8. Ownership interest in the Willits LLC, an Oregon Limited Liability Company.

9. Limited Partnership interest in Feather River Cinemas, LP.

10. Life insurance on Grantor MICHAEL T. FALK through _____ in the face amount of Seventy-five Thousand Dollars ($75,000.00) (Trust is Primary Beneficiary).

## ASSIGNMENT OF INTEREST IN LIMITED PARTNERSHIP

FOR VALUE RECEIVED, the undersigned does hereby grant, assign and transfer to MICHAEL T. FALK and SHANNON M. FALK, as Trustees under the MICHAEL T. AND SHANNON M. FALK MARITAL TRUST dated December 1, 2001, all his right, title and interest in and to all his NEW YORK LIMITED PARTNERSHIPS.

Dated:  June 2, 2004.

_____
MICHAEL T. FALK

MICHAEL T. FALK and SHANNON M. FALK, Trustees, hereby accept the above-described assignment.

Dated:  June 2, 2004.

_____
MICHAEL T. FALK, Trustee

_____
SHANNON M. FALK, Trustee

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF SONOMA  )

On June 2, 2004, before me, the undersigned notary public, personally appeared MICHAEL T. FALK and SHANNON M. FALK, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons or the entity upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal.

_____

ROBERT DISHAROON
COMM. 1329611
NOTARY PUBLIC CALIFORNIA
SONOMA COUNTY
My Comm. Expires Dec. 3, 2005

EXHIBIT " C "

09:57                         UNITED STATES BANKRUPTCY COURT

09:57                         NORTHERN DISTRICT OF CALIFORNIA

09:57                                 ---oOo---

09:57

09:57

09:57              IN RE:                        )

                                                 )

09:57                                            )

                                                 )   No. 07-10865

09:57              SHANNON FALK,                 )

                                                 )

09:57                                            )

                                                 )

09:57                        Debtor.             )

                   _____)

09:57

09:57

09:57

09:57              RULE 2004 EXAMINATION OF MICHAEL THOMAS FALK

09:57                              VOLUME I

09:57                    Tuesday, August 28, 2007

09:57                    (Pages 1 through 84)

09:57

09:57

09:57

09:57

09:57              Reported by

09:57              KIPP R. HODGE

09:57              CSR NO. 7642

**EXHIBIT "D"**

COPY                                                           Page 1

MICHAEL THOMAS FALK                                                                    August 28, 2007



| 11:34 | 1 | |
|---|---|---|
| 11:34 | 2 | Q   And that Exhibit A was on there when you |
| 11:35 | 3 | signed it, correct? |
| 11:35 | 4 | A   I believe so. |
| 11:35 | 5 | Q |
| 11:35 | 6 | |
| 11:35 | 7 | |
| 11:35 | 8 | A |
| 11:35 | 9 | Q |
| 11:35 | 10 | |
| 11:35 | 11 | A |
| 11:35 | 12 | Q |
| 11:35 | 13 | A |
| 11:35 | 14 | Q |
| 11:35 | 15 | |
| 11:35 | 16 | A |
| 11:35 | 17 | Q |
| 11:35 | 18 | |
| 11:35 | 19 | |
| 11:35 | 20 | A |
| 11:35 | 21 | Q |
| 11:35 | 22 | |
| 11:35 | 23 | |
| 11:35 | 24 | A |
| 11:35 | 25 | Q   Were all of these assets listed on Exhibit A |

Page 45

MICHAEL THOMAS FALK                                    August 28, 2007

| 11:35 | 1 | transferred to the Marital Trust? |
| 11:35 | 2 | A    That's what it says here. |
| 11:35 | 3 | Q    Is that your understanding? |
| 11:36 | 4 | A    It is. |
| 11:36 | 5 | Q    Was that your understanding at the time you |
| 11:36 | 6 | executed this document, Exhibit 1? |
| 11:36 | 7 | A    I believe it was, yes. |



11:36   8    Q    ████████████████████████████████████

11:36   9    ████████████████████████████████████████

11:36  10    ████████████████████████████████████████

11:36  11    ███████████████

11:36  12    A    ██████████████████

11:36  13    Q    ████████████████████████████████████████

11:36  14    ██████

11:36  15    A    ████████████████████

11:36  16    Q    ████████████████████████████████████████

11:36  17    █████████████████

11:36  18    A    ██████████████

11:36  19    Q    ████████████████████████████████████

11:36  20    ████████████████████████████████████████

11:36  21    A    ████████████.

11:36  22    Q    ████████████████████████████████████████

11:36  23    ████████████████████████████████████████

11:37  24    A    ███████████

11:37  25    Q    New York Limited Partnerships, was those --

Page 46

| 11:37 | 1 | were those transferred to the trust? |
|---|---|---|
| 11:37 | 2 | A    Yes. |
| 11:37 | 3 | Q    Now, are those limited partnerships the same |
| 11:37 | 4 | ones we've been talking about that produce -- |
| 11:37 | 5 | A    Uh-huh. |
| 11:37 | 6 | Q    -- the income? |
| 11:37 | 7 | That -- are they called Adams Company? |
| 11:37 | 8 | A    Adams Company is a management company. |
| 11:37 | 9 | Q    Who at Adams Company handles your accounting? |
| 11:37 | 10 | A    I don't have any individual there. |
| 11:37 | 11 | Q    Do you know any individuals that work at |
| 11:37 | 12 | Adams Company? |
| 11:37 | 13 | A    No. |
| 11:37 | 14 | Q    Do you have a phone number for Adams Company? |
| 11:37 | 15 | A    No.  I'm sure you could get it from the phone |
| 11:37 | 16 | book. |
| 11:37 | 17 | Q    Is it a -- just a management company or is |
| 11:37 | 18 | that the general partner? |
| 11:37 | 19 | A    I have no idea. |
| 11:37 | 20 | Q    Who's the general partner of the limited |
| 11:37 | 21 | partnership? |
| 11:37 | 22 | A    I have no idea. |
| 11:37 | 23 | Q    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ |
| 11:37 | 24 | ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ |
| 11:38 | 25 | ▬▬▬▬▬▬▬▬▬▬▬▬▬ |

Page 47

FALK, MICHAEL THOMAS - Vol. II                                    9/12/2007

16:00                    UNITED STATES BANKRUPTCY COURT

16:00                    NORTHERN DISTRICT OF CALIFORNIA

16:00                          ---o0o---

16:00

16:00

16:00          IN RE:                        )

                                             )

16:00                                        )

                                             )  No. 07-10865

16:00          SHANNON FALK,                 )

                                             )

16:00                                        )

                                             )

16:00                    Debtor.             )

                _____)

16:00

16:00

16:00

16:00          RULE 2004 EXAMINATION OF MICHAEL THOMAS FALK

16:00                         VOLUME II

16:00             Wednesday, September 12, 2007

16:00              (Pages 85 through 150)

16:00

16:00

16:00

16:00

16:00          Reported by

16:00          KIPP R. HODGE

16:00          CSR NO. 7642

16:00                                          COPY

                                               Page 85



| 11:03 | 1 | ████████████████████████████████████████ |
| 11:03 | 2 | ████████████████████████████████████████ |
| 11:03 | 3 | ████████. |
| 11:03 | 4 | Q    ████████████████████████████████████ |
| 11:03 | 5 | ████████████████████████████████████████ |
| 11:03 | 6 | ████████████████████████████████████████ |
| 11:03 | 7 | A    ██████ |
| 11:03 | 8 | Q    Okay.  So what happen -- what has happened to |
| 11:03 | 9 | the income from the New York Partnerships? |
| 11:03 | 10 | A    What do you mean? |
| 11:03 | 11 | Q    Who's collected that? |
| 11:03 | 12 | A    I have. |
| 11:04 | 13 | Q    Have you given any part of that to Shannon? |
| 11:04 | 14 | A    I have. |
| 11:04 | 15 | Q    In the form of support? |
| 11:04 | 16 | A    Yes. |
| 11:04 | 17 | Q    ████████████████████████████████████ |
| 11:04 | 18 | ████████████? |
| 11:04 | 19 | A    ██████. |
| 11:04 | 20 | Q    ████████████████████████████████████ |
| 11:04 | 21 | ████████████████████████████████████████ |
| 11:04 | 22 | ████████████████████. |
| 11:04 | 23 | A    ████████████████████████████████████ |
| 11:04 | 24 | ████████████. |
| 11:04 | 25 | Q    ████████████████████████████████████ |

Page 123

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXCERPT OF RECORD 3**

1  David N. Chandler, Sr.  SBN 60780
   David N. Chandler, Jr.  SBN 235427
2  DAVID N. CHANDLER, p.c.
   1747 Fourth Street
3  Santa Rosa, CA  95404
   Telephone: (707) 528-4331
4
   Attorneys for Plaintiff
5

6              UNITED STATES BANKRUPTCY COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8
   IN RE:                    CASE NO. 07-10865
9
   SHANNON FALK,             CHAPTER 11
10
   _____Debtor._____/
11
   SHANNON FALK,             A.P. No. 07-1080
12
        Plaintiff,
13
   v.
14
   MICHAEL FALK,
15                           NOTICE OF HEARING ON MOTION
   _____Defendant._____/ FOR SUMMARY JUDGMENT
16                           Date:  December 21, 2007
                             Time:  9:00 a.m.
17                           Place: 99 South E St.
                                    Santa Rosa, CA
18

19      To: Michael Falk, Defendant herein, and to Craig Burnett, his

20 attorney:

21      PLEASE TAKE NOTICE that a hearing will be held on the

22 Plaintiff's Motion for Summary Judgment on December 21, 2007 at the

23 hour of 9:00 a.m. before the above entitled Court located at 99 S.

24 E Street, Santa Rosa, California.

25 Dated:   11/21/07              DAVID N. CHANDLER, p.c.

26

27                               By: /s/ David N. Chandler
                                 DAVID N. CHANDLER,
28                               Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXCERPT OF RECORD 4**

**CRAIG A. BURNETT, ESQ. ID. # 118907**
LAW OFFICES OF C. BURNETT
537 FOURTH STREET, SUITE A
SANTA ROSA, CALIFORNIA 95401
Telephone: (707) 523-3328
E-mail:  burnett@sonic.net

Attorney for Defendant

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re:**<br><br>SHANNON FALK,<br><br>                              Debtor. | Case No.   07-10865<br>Chapter    11<br><br>A.P. No.:  07-1080 |
| SHANNON FALK,<br><br>                         Plaintiff,<br><br>   vs.<br><br>MICHAEL T. FALK,<br><br>                      Defendants. | **DECLARATION OF MICHAEL T. FALK IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT FILED BY PLAINTIFF SHANNON FALK AND IN SUPPORT OF COUNTER-MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT MICHAEL T. FALK**<br><br><u>**HEARING INFORMATION**</u><br><br>**DATE:**    **December 21, 2007**<br>**TIME:**     **9:00 a.m.**<br>**PLACE:**  **99 South E Street**<br>                **Santa Rosa, California** |

I, MICHAEL T. FALK, declare as follows:

1.      I am the Defendant in the above-captions Adversary Proceeding.

2.      The Debtor, SHANNON M. FALK, and I were married in the State of California on

September 9, 1989. Prior to our marriage, I had one son, Jonathan Samuel Barry Falk (current age 24,

DOB: June 12, 1983), by a previous relationship.  During our marriage, SHANNON gave birth to two

children, Wm. Maxwell Falk, current age 17 (DOB: February 17, 1990), and Zoe Elizabeth Falk, current age 11, DOB: August 17, 1996.

3.    SHANNON and I separated on December 25, 2005.  On January 31, 2006, SHANNON filed her Petition For Legal Separation in the Sonoma County Superior Court, Case No. SFL 32398. On March 23, 2006, SHANNON amended her Petition requesting an order dissolving their marriage. The Sonoma County Superior Court granted that request, and an interim order of dissolution (status only) was entered and effective as of May 15, 2007.

4.    In 2001, and for estate and estate tax planning, SHANNON and I met with Estate and Tax Attorney, Robert Disharoon, of the Anderson, Ziegler firm, in Santa Rosa, California, and signed our initial Marital Trust Agreement.

5.    As to the New York Partnerships, these interests are described as follows:

- Limited Partnership Interest of One Point Five Percent (1.5%) held in the name of MICHAEL T. FALK in 110 West 40, LLC, a New York Limited Liability Company, which acquires, owns, manages and operates the real property located at and known as 110 West 40th Street, New York, New York; and,

- Partnership Interest of Three Percent (3%) held in the name of MICHAEL T. FALK in Ten West Thirty-Third Joint Venture, a New York limited partnership, which acquired, owns, manages and operates the real property located at and known as 10 West 33rd Street, New York, New York.

6.    In 1993, and during my marriage to SHANNON, I inherited both of these interests upon the death of my mother, Gertrude R. Falk.

7.    In May 2004, I was in a severe bicycle accident, in which I broke my pelvis and back and injured my right shoulder.  I was hospitalized at Palm Drive Hospital in Sebastopol for approximately 4-

5 days and my recuperation period was approximately 4-6 weeks.   Indeed, I was still using a walker to assist me when I signed the Amended Marital Trust Agreement in June 2004 at attorney Disharoon's offices.   It was this accident which prompted SHANNON and me to contact attorney Disharoon to amend our Marital Trust Agreement and transfer our community and separate property into the Trust.

        8.     On June 2, 2004, the Debtor, SHANNON M. FALK, and I signed the following documents which had been prepared by our Attorney, Robert Disharoon, :  (A) an Amendment in its Entirety to the Michael T. and Shannon M. Falk Marital Trust (Exhibit A to the Complaint), (B) the Property Agreement (Exhibit B to the Complaint), and  (C) the Assignment of Interest in Limited Partnership (Exhibit C to the Complaint).

        9.     My intention in signing these documents was to transfer management of the Property, including the New York Partnerships, to our Marital Trust, which set up a series of trusts for the benefit of my then wife, SHANNON, and my three children, Jonathan, Max and Zoe.  I did not intend to change or modify the character or ownership of my separate property, including the New York Partnerships. Indeed, the Amended Marital Trust Agreement specifically states this fact in Article I(c):

    1.    Character of Trust Property:  **Any property transferred to or withdrawn from the trust shall retain its character as community property or separate property after its transfer or withdrawal.**  The Grantors and the Trustees agree that the Trustees shall retain and have only such powers with respect to the community property of the Grantors as, under California law, are consistent with such property of the Grantors contributed to the trust being and remaining their community property." (Emphasis added)

Similarly, the Property Agreement states and declares that all property transferred to the Marital Trust shall retain its character and ownership as it was prior to the Transfer:

    "2.    **We declare that any property, or interest in property, owned by either of us before our marriage or acquired by either of us at any time by gift or inheritance and that is registered or otherwise held in either of our names alone or that is designed as separate property under our Trust is the separate property of that spouse**." (Emphasis added)

DECL. OF MICHAEL T. FALK IN OPP. TO MTN. FOR SUMM. JUDG.
FILED BY PLF. AND IN SUPPORT OF COUNTER-MOTION
-3-

10.     In signing the "Assignment of Interest in Limited Partnership" document (Exhibit C to the Complaint), I did not intend to change the character or ownership of the New York Partnerships from my separate property to community property jointly owned with my wife, SHANNON.  Instead, it was my intention and purpose that upon the death of either of us, that the Marital Trust govern and determine the inheritance rights of our children and my wife.  I assumed then we would remain married until that time, but subsequent events have proven differently.

11.     On March 27, 2007, I revoked the Marital Trust in writing and served notice this revocation on my wife, through my family law attorney.

12.     The foregoing matters are within my personal knowledge and I am competent to testify to their truth if called as a witness.

13.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30TH day of November, 2007, at Santa Rosa, California.


/S/ Michael T. Falk_____
MICHAEL T. FALK

DECL. OF MICHAEL T. FALK IN OPP. TO MTN. FOR SUMM. JUDG.
FILED BY PLF. AND IN SUPPORT OF COUNTER-MOTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

**EXCERPT OF RECORD 5**

16
17
18
19
20
21
22
23
24
25
26
27
28

**CRAIG A. BURNETT, ESQ. ID. # 118907**
LAW OFFICES OF C. BURNETT
537 FOURTH STREET, SUITE A
SANTA ROSA, CALIFORNIA 95401
Telephone: (707) 523-3328
E-mail:  burnett@sonic.net

Attorney for Defendant

### UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re:**<br><br>SHANNON FALK,<br><br>                       Debtor. | Case No.   07-10865<br>Chapter    11<br><br>A.P. No.:   07-1080 |
| SHANNON M. FALK,<br><br><br>                       Plaintiff,<br><br>   vs.<br><br>MICHAEL T. FALK,<br><br><br>                    Defendants. | **EVIDENTIARY OBJECTIONS FILED BY DEFENDANT MICHAEL T. FALK IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT FILED BY PLAINTIFF SHANNON FALK**<br><br>**HEARING INFORMATION**<br><br>**DATE:**     **December 21, 2007**<br>**TIME:**     **9:00 a.m.**<br>**PLACE:**   **99 South E Street**<br>                   **Santa Rosa, California** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant MICHAEL T. FALK

hereby submits the following evidentiary objections to the Declarations of SHANNON M. FALK and

David N. Chandler filed in support of her Motion for Summary Judgment, in the above-captioned

matter:

EVIDENTIRARY OBJECTIONS FILED BY DEF. MICHAEL T. FALK
IN OPP. TO THE MTN. FOR SUMM JUDG. FILED BY PLAINTIFF
-1-

The specific objections to the evidence submitted by Plaintiff SHANNON M. FALK are summarized in the following Chart of Objections:

| EVIDENCE OBJECTED TO BY DEFENDANT: | OBJECTION(S): |
|---|---|
| **Declaration of SHANNON M. FALK:** | |
| | |
| "5.  The said Property Agreement was intended and did provide for transmutation of the property described therein which has theretofore been the separate property of either one of us to community property.  It was our stated intention to so transmute the subject property." | • Improper conclusions of fact and/or law without adequate foundation as to the Declarant's legal background or training to interpret the Property Agreement.  As such, the testimony is improper expert testimony by a lay witness. See Fed.R.Evid. §§ 402, 403, 601, 602, and 701. <br>• Also, violates the California Supreme Court's holding in the *Estate of MacDonald,* 51 Cal.3d 262, at 271-272, 794 .2d 911, 272 Cal. Rptr. 153 (Cal. Sup. Ct. 1990), wherein the Court held the determination whether the language of a writing purporting to transmute property must be made by reference to the writing itself and without resort to parol evidence. *See In re Marriage of Barneson*, 69 Cal. App. 4th 583, 588, 81 Cal. Rptr. 2d 726 (Cal. Ct. of App. 1999). <br>• Finally, the testimony is objected to as containing improper conclusions of law and impeding on this Court's ultimate obligation to rule upon issues of law. See Fed.R.Evid. §§ 402, 403, 601, 602 and 701. |
| "6.  The Trust (Exhibit B) provides that the property set forth in the Schedules is community property." | • Improper conclusions of fact and/or law without adequate foundation as to the Declarant's legal background or training to interpret the Property Agreement.  As such, the testimony is improper expert testimony by a lay witness. See Fed.R.Evid. §§ 402, 403, 601, 602, and 701. <br>• Also, violates the California Supreme Court's holding in the *Estate of MacDonald,* 51 Cal.3d 262, at 271-272, 794 .2d 911, 272 Cal. Rptr. 153 (Cal. Sup. Ct. 1990), wherein the Court held the |

EVIDENTIRARY OBJECTIONS FILED BY DEF. MICHAEL T. FALK
IN OPP. TO THE MTN. FOR SUMM JUDG. FILED BY PLAINTIFF

| | |
|---|---|
| | determination whether the language of a writing purporting to transmute property must be made by reference to the writing itself and without resort to parol evidence. *See In re Marriage of Barneson*, 69 Cal. App. 4th 583, 588, 81 Cal. Rptr. 2d 726 (Cal. Ct. of App. 1999).<br>• Finally, the testimony is objected to as containing improper conclusions of law and impeding on this Court's ultimate obligation to rule upon issues of law. See Fed.R.Evid. §§ 402, 403, 601, 602 and 701. |
| "7.  The limited partnership interests or "N.Y. partnerships", along with the other properties described in the Property Agreement, Exhibit B, were, in fact transferred to the Trust. The real properties were transferred by Deed executed, acknowledged and recorded.    The "N.Y. Partnerships" were transferred by Exhibit C hereto, executed by Defendant and delivered to the Trustees of the Trust." | • Improper conclusions of fact and/or law without adequate foundation as to the Declarant's legal background or training to interpret the Property Agreement.  As such, the testimony is improper expert testimony by a lay witness. See Fed.R.Evid. §§ 402, 403, 601, 602, and 701.<br>• Also, violates the California Supreme Court's holding in the *Estate of MacDonald*, 51 Cal.3d 262, at 271-272, 794 .2d 911, 272 Cal. Rptr. 153 (Cal. Sup. Ct. 1990), wherein the Court held the determination whether the language of a writing purporting to transmute property must be made by reference to the writing itself and without resort to parol evidence. *See In re Marriage of Barneson*, 69 Cal. App. 4th 583, 588, 81 Cal. Rptr. 2d 726 (Cal. Ct. of App. 1999).<br>• Objection, to the extent that such testimony refers to other documents not attached to the supporting declaration, such testimony is hearsay and violates the Federal Rules requirements for the production of the original or an admissible copy of the documents. See Fed.R.Evid. 801, 802, 1001, and, 1002.<br>• Finally, the testimony is objected to as containing improper conclusions of law and impeding on this Court's ultimate obligation to rule upon issues of law. See Fed.R.Evid. §§ 402, 403, 601, 602 and 701. |
| "8.    Rob Disharoon of Anderson, Ziegler, | • Improper conclusions of fact and/or law |

EVIDENTIRARY OBJECTIONS FILED BY DEF. MICHAEL T. FALK
IN OPP. TO THE MTN. FOR SUMM JUDG. FILED BY PLAINTIFF

-3-

| | |
|---|---|
| Disharoon, Gallagher & Gray prepared the Restated 1994 [sic] Trust of Michael and Shannon Falk, the Property Agreement, the Deeds and Exhibit C for the express and stated purpose of transmuting the properties described in the Property Agreement to community property and placing said community property in trust for our mutual benefit as well as the benefit of our child.  Mr. Disharoon consulted with the two of us extensively regarding the transfer and transmutation of the property and we both stated our intentions in his presence." | without adequate foundation as to the Declarant's legal background or training to interpret the Property Agreement.  As such, the testimony is improper expert testimony by a lay witness. See Fed.R.Evid. §§ 402, 403, 601, 602, and 701.<br><br>• Also, violates the California Supreme Court's holding in the *Estate of MacDonald,* 51 Cal.3d 262, at 271-272, 794 .2d 911, 272 Cal. Rptr. 153 (Cal. Sup. Ct. 1990), wherein the Court held the determination whether the language of a writing purporting to transmute property must be made by reference to the writing itself and without resort to parol evidence. *See In re Marriage of Barneson*, 69 Cal. App. 4th 583, 588, 81 Cal. Rptr. 2d 726 (Cal. Ct. of App. 1999).<br><br>• Objected to as violating any attorney-client privilege between Defendant MICHAEL T. FALK and attorney Rob Disharoon. MICHAEL T. FALK holds an attorney-client privilege with attorney Disharoon and does not waive said privilege. See Fed.R.Evid. Rule 501, and Cal. Evid. Code §§951-955 and 962.<br><br>• Objection, to the extent that such testimony refers to other documents not attached to the supporting declaration, such testimony is hearsay and violates the Federal Rules requirements for the production of the original or an admissible copy of the documents. See Fed.R.Evid. 801, 802, 1001, and, 1002.<br><br>• Finally, the testimony is objected to as containing improper conclusions of law and impeding on this Court's ultimate obligation to rule upon issues of law. See Fed.R.Evid. §§ 402, 403, 601, 602 and 701. |
| | |
| | |
| **Declaration of David. N. Chandler, including the Deposition Testimony of Michael T. Falk**: | |
| "5.    Mr. Falk testified to the following: | No objection. |

| | |
|---|---|
| a.   That he executed the Amendment in its entirety to the Michael and Shannon Falk Trust (Exhibit 1 to Deposition), Exhibit B herein [Vol. 1, p. 45, lines 2-4]. | |
| b.   That he understood the assets described in Exhibit A to Deposition Exhibit 1 (Exhibit B herein) to contain a list of assets transferred to the Michael and Shannon Falk Trust [Vol. 1, p. 45, line 25, pg. 46, lines 1-7]. | No objection |
| c.   That the New York Limited Partnership interests were transferred to the Trust [Vol. 1, p. 46, line 25, p. 47, lines 1-22]. | No objection. |
| d.   That Michael Falk has collected the income from the New York Partnerships and applied a portion thereof to support payments to Plaintiff [Vol. II, p. 123, lines 8-16]. | No objection. |

DATED: December 5, 2007                    CRAIG A. BURNETT, ESQ. ID. #118907


                                        /S/ Craig A. Burnett, Esq. _____ ____
                                        Craig A. Burnett, Esq.
                                        Attorney for Defendant

EVIDENTIRARY OBJECTIONS FILED BY DEF. MICHAEL T. FALK
IN OPP. TO THE MTN. FOR SUMM JUDG. FILED BY PLAINTIFF

-5-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXCERPT OF RECORD 6**

Entered on Docket
January 22, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

SHANNON FALK,                                          No. 07-10865

                          Debtor(s).
_____/

SHANNON FALK,

                          Plaintiff(s),

          v.                                           A.P. No. 07-1080

MICHAEL FALK,

                          Defendant(s).
_____/

Memorandum on Cross Motions for Summary Judgment
_____

          Chapter 11 debtor in possession and plaintiff Shannon Falk is the former wife of defendant Michael

Falk.  In this adversary proceeding, she seeks a determination that certain New York Limited Partnership

interests which were formerly the separate property of Michael are now marital community property.  The

parties have each filed a motion for summary judgment.

          Michael has objected to extrinsic evidence offered by Shannon to prove that the limited partnership

interests were transmuted to community property.  It appearing that transmutation is to be determined by

documentary evidence alone, those objections will be sustained and the court will consider only the

documents.

1

While they were married to each other, Michael and Shannon established a marital trust dated December 1, 2001.  On June 2, 2004, Michael and Shannon signed three documents.   One was entitled "Property Agreement" and provided, in pertinent part:

    1. Except as otherwise provided in this Agreement, we declare that all property owned by us on the date of this Agreement, or hereafter acquired by us, title to which is held (i) in both our names, including property held in joint tenancy form, or (ii) titled in the MICHAEL T. AND SHANNON M. FALK MARITAL TRUST dated December 1, 2001, (unless specifically designated as the separate property of either of us), is our community property.  We hereby agree to change the character of any such joint property to community property if it is not already titled as community property.

    2. We declare that any property, or interest in property, owned by either of us before our marriage or acquired by either of us at any time by gift or inheritance and that is registered or otherwise held in either of our names alone or that is designated as separate property under our Trust is the separate property of that spouse.

On the same day, Michael executed a document entitled "ASSIGNMENT OF INTEREST IN LIMITED PARTNERSHIP" which provided:

    FOR VALUE RECEIVED, the undersigned does hereby grant, assign and transfer to MICHAEL T. FALK and SHANNON M. FALK, as Trustees under the MICHAEL T. AND SHANNON M. FALK MARITAL TRUST dated December 1, 2001, all his right, title and interest in and to all his NEW YORK LIMITED PARTNERSHIPS.

Also on the same day, Michael and Shannon executed an amendment to the Trust which provided that they "have transferred and conveyed to the Trustees the property described in Exhibit "A" to this agreement."  Exhibit "A," entitled "COMMUNITY PROPERTY TRANSFERRED TO THE TRUST," includes "New York Limited Partnerships."

The documents clearly show that the limited partnership interests were transmuted to community property.  The assignment transferred them to the trust.  The Property Agreement provided  that any property held in the name of the trust was changed to community property, and Exhibit "A" to the amendment to the trust acknowledged the interests as community property.

Michael argues that "a spouse's simple transfer of his or her separate property to a marital trust for

2

1  management and inheritance purposes does not effect a change of the character and ownership of such

2  property." This is a correct statement of the law. However, we do not have a "simple transfer" here. We

3  have a transfer together with an agreement to change the character of the property and an express

4  acknowledgment that the transferred property is community property. These facts distinguish this case from

5  the cases Michael cites.

6        Michael's reliance on the second paragraph of the Property Agreement is misplaced. That paragraph

7  says that notwithstanding the first paragraph separate property held in the name of either spouse alone or

8  designated as separate property in the trust remains separate property. However, the partnership interests

9  are neither. The are held in the name of the trust, not Michael, by virtue of the assignment. They are not

10  designated as separate property in the trust. Therefore, the second paragraph of the Property Agreement

11  does not apply to them.

12        Nor does paragraph C of section I of the trust avail Michael. That section merely says that property

13  transferred to or withdrawn from the trust retains its character after transfer or withdrawal. That means that

14  transfer or withdrawal, by itself, does not change the property. As noted above, it is not the transfer to the

15  trust which changed the property but rather the Property Agreement. Paragraph C merely means that the

16  limited partnership agreements, having been transmuted to community property, remain community property

17  even if withdrawn from the trust.

18        For the foregoing reasons, Shannon's motion for summary judgment will be granted and Michael's

19  will be denied. Counsel for Shannon shall submit an appropriate form of order so providing and an

20  appropriate form of judgment.

21

22  Dated: January 21, 2008

23

24                                          Alan Jaroslovsky
                                           U.S. Bankruptcy Judge

25

26

                                3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXCERPT OF RECORD 7**

Entered on Docket
February 01, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

David N. Chandler, Sr.  SBN 60780
David N. Chandler, Jr.  SBN 235427
DAVID N. CHANDLER, P.C.
1747 Fourth Street
Santa Rosa, CA  95404
Telephone: (707) 528-4331

Attorneys for Plaintiff

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE:                        CASE NO. 07-10865

SHANNON FALK,                 CHAPTER 11

____Debtor._____/

SHANNON FALK,                 A.P. No. 07-1080

     Plaintiff,

v.

MICHAEL FALK,
                              ORDER GRANTING PLAINTIFF'S
____Defendant._____/       MOTION FOR SUMMARY JUDGMENT

     The Motion for Summary Judgment filed herein by Shannon Falk, Plaintiff, and the Counter Motion for Summary Judgment filed herein by Michael Falk, Defendant, having regularly come on for hearing before the above entitled Court on January 11, 2008, David N. Chandler appearing for Shannon Falk and Craig Burnett appearing for Michael Falk, the matters having been argued and submitted, and the Court having filed its Memorandum of Decision on January 22, 2008, and cause appearing,

     IT IS HEREBY ORDERED as follows:

     1.  That the Motion for Summary Judgment filed by Shannon Falk, Plaintiff, is granted.

     2.  That the Motion for Summary Judgment filed by Michael Falk, Defendant, is denied.

1

1        3.    That Judgment shall enter in favor of the Plaintiff on

2    the Complaint filed herein on October 10, 2007.

3

4    Dated:  February 1, 2008

5

6                                        Alan Jaroslovsky
                                         U.S. Bankruptcy Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**EXCERPT OF RECORD 8**

1

1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              (SANTA ROSA DIVISION)

4

5   In re:

6   SHANNON FALK,                     Case No. 07-10865

7                                     Chapter 11

8                                     Santa Rosa ,California
                                      January 11, 2008
9                                     9:26 a.m.
            Debtors.
10   _____/

11   SHANNON FALK,

12          Plaintiff,

13      v.                            A.P. No. 07-1080

14   MICHAEL T. FALK,

15          Defendant.
     _____/
16

17
                TRANSCRIPT OF PROCEEDINGS
18            MOTION FOR SUMMARY JUDGMENT
          COUNTER MOTION FOR SUMMARY JUDGMENT
19      MOTION TO COMPEL TURNOVER BY CUSTODIAN
              AND FOR AN ACCOUNTING
20
          BEFORE THE HONORABLE ALAN JAROSLOVSKY
21            UNITED STATES BANKRUPTCY JUDGE

22
     APPEARANCES:
23
     For the Plaintiff:    LAW OFFICES OF DAVID N. CHANDLER
24                         BY: DAVID N. CHANDLER, ESQ.
                           1747 - 4TH Street
25                         Santa Rosa, California 95404

2

```
 1   APPEARANCES (CONTINUED)

 2
     For the Defendant:       LAW OFFICES OF CRAIG A. BURNETT
 3                            BY: CRAIG A. BURNETT, ESQ.
                              537 - 4th Street #A
 4                            Santa Rosa, California 95401

 5

 6   Court Recorder:          DAWN PASSALACQUA
                              UNITED STATES BANKRUPTCY COURT
 7                            99 South "E" Street
                              Santa Rosa, California 95404
 8

 9

10   Transcription Service:   Jo McCall
                              Electronic Court
11                            Recording/Transcribing
                              2868 E. Clifton Court
12                            Gilbert, Arizona 85297
                              Telephone: (480)361-3790
13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                    P R O C E E D I N G S

2    January 11, 2008                          9:26 a.m.

3                         ---oOo—--

4              THE CLERK: No. 10, <u>Falk versus Falk.</u>

5              MR. CHANDLER: David Chandler for the Debtor, Your

6    Honor, and plaintiff.

7              MR. BURNETT: Good morning, Your Honor, Craig

8    Burnett for Michael Falk, defendant in the adversary and

9    counter-movant.

10             THE COURT: All right.  Well, the summary judgment

11   I'll have to take under submission.  I will listen to

12   anything either side wants to add to the their written

13   papers.

14             As to the motion to compel turnover by a

15   custodian and an accounting, I am not inclined to order

16   anything turned over to this Debtor until I am -- have

17   determined that the Debtor did not violate any State Court

18   orders.  If the Debtor did violate State Court orders, then

19   the Debtor is not fit to be a debtor in possession, and I'm

20   certainly not going to order anything turned over.

21             MR. CHANDLER: Your Honor, I apologize to the

22   Court.  I misspoke at the last hearing, and I advised the

23   Court that with regard to a piece of property that a

24   commissioner was ordered to sign a deed on behalf of Mrs.

25   Falk, I represented to the Court that she declined to sign

4

1 | the deed, and a commissioner was appointed.  And I

2 | misspoke, that in review of the record, that's not what

3 | happened.  What happened was an ex parte application was

4 | made for an order appointing a commissioner without any

5 | failure of Mrs. Falk to do anything.  Nobody ordered her to

6 | do anything; nobody asked her to do anything.  And an ex

7 | parte order appointing a commissioner and directing the

8 | clerk to execute the deed was entered, ex parte, without

9 | her knowledge.  She got to court on the hearing on the

10 | order to show cause and was shocked that the deed had

11 | already been signed and the escrow had been closed, before

12 | she was ever ordered to do anything.

13 |         So what I represented to the Court was not

14 | exactly true.  It seems odd that a court would do that, but

15 | that's exactly what the record shows.  And I had the

16 | document, and I meant to bring it here today, and my client

17 | took the copy, and I didn't get it back.  But there is an

18 | order, an ex parte order, appointing a commissioner to sign

19 | a deed and that deed in fact was executed and recorded and

20 | the escrow closed before the order to show cause was ever

21 | heard.

22 |         THE COURT: Well, assuming there's no other orders

23 | that would exonerate your client -- except that doesn't

24 | really make sense to me from what I know of the State

25 | Court -- they are not -- it's not a usual thing for them to

5

1   ignore people's rights by signing ex parte orders without

2   reason.

3           MR. CHANDLER: Your Honor, that's exactly why I

4   misspoke.  I assumed that there was something that preceded

5   that or it wouldn't have happened.  If it happened, it's

6   not in the record.  My client says it didn't happen, so I

7   don't think there are any orders out there such as --

8           THE COURT: Well, you understand my concern.

9           MR. CHANDLER: I do, Your Honor, but --

10          THE COURT: A Chapter 11 is built upon debtors in

11  possession following the orders of the court, and they're

12  not entitled to pick and choose which ones they think are

13  valid and which ones they are --

14          MR. CHANDLER: Well, I understand that, Your

15  Honor.  However, the transaction that was the subject of

16  that order is incredibly suspect and is being investigated

17  by law enforcement, right now, as we speak.  And there

18  is -- I'm not really at liberty to say what exactly is

19  involved, but it is -- and we don't think that Mr. Falk is

20  directly, you know, a central figure in all of this, but he

21  is certainly connected with the rest of the transaction,

22  which is much broader than this property, this case, or

23  these parties.

24          THE COURT: Well, that's something for another

25  day, at another time, and maybe another court.

6

1          MR. CHANDLER: It is, but if it relates to this

2   particular transaction we're talking about, what was put

3   before Mrs. Falk was fraudulent on its face as confirmed by

4   law enforcement.

5          THE COURT: So are you saying there's a triable

6   issue of fact here?  I have a motion for summary judgment

7   in front of me.

8          MR. CHANDLER: No.  This has nothing to do with

9   the summary judgment motion.  The summary judgment motion

10  relates to a series of documents and agreements entered

11  into between the parties with respect to a trust, and it

12  has nothing to do with this particular piece of property or

13  this money.  This money that we're dealing with for

14  turnover was money that is proceeds of the sale of this

15  house on Laguna Road.

16         THE COURT: Yeah, I know that, but you just -- you

17  just made allegations that there was some fraud involved.

18         MR. CHANDLER: Yes.

19         THE COURT: Now, I can't take your word for that.

20         MR. CHANDLER: Well, the Court seemed to take

21  counsel's word in a declaration that there was some fraud,

22  with no factual basis at the last hearing.  I was

23  arguing --

24         THE COURT: I didn't make a ruling at the last

25  hearing except to put this over.

```
1            MR. CHANDLER: Well --

2            THE COURT: I hope -- I realize that some people

3   think I'm a total boob, but I try not to make rulings

4   without competent evidence to back them up.

5            MR. CHANDLER: Well, I understand that, and I'm

6   not asking the Court to make a ruling on this today.  I'm

7   just making a representation, just as counsel did last

8   time, and this transaction had some problems, and I will

9   admit these problems were unbeknownst to Mrs. Falk at the

10  time.  But it's very convoluted what happened in that

11  transaction, but the long and the short of it is, there is

12  a piece of property that was community property, on Laguna

13  Road.  It was sold, and there's some money.  There's some

14  proceeds.

15           The proceeds were ordered deposited into

16  counsel's trust account for division later on, and in the

17  course of this divorce, the payments -- Mr. Falk doesn't

18  bother to pay the payments on Malone Road even though he

19  has the ability to do so from the money that's the subject

20  of the motion for summary judgment.  He's got $40,000 a

21  month.  So instead of making the payments on Malone Road,

22  he puts the money aside and says, oh, my God, she's not

23  making the payments on Malone Road.  But he claims that

24  that money is his sole and separate property despite --

25           THE COURT: Where is the money right now?
```

8

1          MR. CHANDLER: The 40,000 a month?  It comes in

2   every month and goes into Mr. Falk's account.  What he does

3   with it, I have no idea.

4          THE COURT: I thought it was in an attorney's

5   trust account.

6          MR. CHANDLER: That's the proceeds from the sale

7   of Laguna Road.  Every month Mr. Falk receives

8   approximately $40,000 a month as a distribution on a

9   limited partnership interest that he had -- that the

10  parties have in office buildings in Manhattan.  And that

11  money comes in every month.  That's separate from the money

12  that's held by the custodian.  The money held by the

13  custodian is proceeds from the sale of the Laguna Road

14  property.

15         THE COURT: And who's the custodian?

16         MR. CHANDLER: Joanne Bertram, the attorney in the

17  State Court.

18         THE COURT: All right.  Well, I'm not inclined to

19  move that money until I am certain your client is a proper

20  debtor in possession, and your concessions last time seemed

21  to indicate pretty clearly that she was not.

22         MR. CHANDLER: Well, Your Honor, I misspoke on

23  that one particular order, and the reason that we wanted

24  possession of the money was not for Ms. Falk to spend it;

25  it is because we are unable to pay the payments to

9

 1  Greenpoint Mortgage, the second mortgage holder on Malone

 2  Road, and we wanted the money to pay the payments.

 3          THE COURT: Who lives in Malone Road?

 4          MR. CHANDLER: Ms. Falk.

 5          THE COURT: Is there equity in the property?  I'm

 6  not sure that --

 7          MR. CHANDLER: Is there equity in any property in

 8  Sonoma County?  I don't know.

 9          THE COURT: Well, if I've got cash in the bank,

10  wouldn't I -- at this point, rather than put it into real

11  estate, wouldn't it make more sense for the estate to just

12  keep it in cash?

13          MR. CHANDLER: Your Honor, the second deed of

14  trust on Malone Road also is fraught with problems and is

15  part of the law enforcement investigation.  I don't know.

16  The holder of the second has withdrawn their motion for

17  relief from stay.  When I pressed the discovery, they

18  withdrew it.

19          THE COURT: So I'm a little uncomfortable with

20  using liquid assets of the estate to pour it into real

21  estate at this point.

22          MR. CHANDLER: Well, I'm a little uncomfortable

23  giving it to Greenpoint Mortgage at this point, but that

24  issue is not before us right now because Greenpoint

25  withdrew their motion for relief from stay, probably for

10

1   good reason.  The problem is, is the fund of money is

2   diminishing.  The counsel is using the money to pay for

3   things that -- such as Mr. Falk's share of custody

4   evaluation issues and things like that, and we have --

5              THE COURT: You mean to say that the money is not

6   being held; it's being used?

7              MR. CHANDLER: Well, according to the declaration,

8   they kind of use it willy-nilly.  I can't really tell.  I

9   would like at least an order of this Court that it be held

10  and no money distributed from that fund, pending further

11  order of the Court.  We don't want it to go anywhere.

12             THE COURT: All right.  Perhaps it's time I heard

13  from Mr. Burnett.

14             MR. BURNETT: Your Honor, Mr. Chandler keeps

15  referring to Mr. Falk's malfeasance and being under

16  investigation.  There's no criminal matter; there's no

17  anything.  There's no charge of any kind against Mr. Falk.

18  There are, however, criminal charges against Mrs. Falk.

19  She is now being prosecuted by the Sonoma County District

20  Attorney for fraud and for forgery.

21             Mrs. Falk also is under an ongoing order to

22  cooperate with the sale of the property on Malone Road.

23  And she has so far refused to cooperate with that sale.

24             THE COURT: Which property?

25             MR. BURNETT: Malone Road.

11

1          THE COURT: Malone Road, that's where she's

2    living?

3          MR. BURNETT: That's where she's living.  She

4    filed her Chapter 11 petition just on the eve of the sale

5    of that property, as I understand.

6          Regarding this stream of cash that Mr. Chandler

7    keeps referring to, this $40,000; it's not $40,000.  It's

8    about $8,000, and it's his separate property, and that's

9    the subject of both summary judgment motions.  So if

10   there's any bad conduct going on here, it's not because Mr.

11   Chandler alleges that there's something going on by Mr.

12   Falk; it's Mrs. Falk who's actually being criminally

13   prosecuted and disobeying court orders.

14         MR. CHANDLER: Your Honor, I would like to address

15   briefly this Malone Road situation and the foreclosure.

16   What happened was Greenpoint was on the verge of

17   foreclosure.  Mr. Falk filed about noon on the day before

18   foreclosure a Chapter 13 case.  He had counsel.  He

19   obviously did not qualify for Chapter 13.  He was over the

20   limit.  He filed an abusive filing about midday the day

21   before foreclosure, unbeknownst to Mrs. Falk.

22         Mrs. Falk was unable to get her credit counseling

23   the day before, so she got it that same day, the day before

24   the foreclosure and waited until 12:01 a.m. on the day of

25   the foreclosure to file this Chapter 11 case so that we

12

1  would have -- we wouldn't fall in that line of cases that

2  says that you have to get the credit counseling the day

3  before you file, and, you know, we've gone over that issue,

4  but it is something we are concerned with when we file a

5  case.  So she filed at 12:01 a.m., not knowing that Mr.

6  Falk had filed.

7          So when Mr. Burnett says that Mrs. Falk did

8  something wrong by filing to stop the foreclosure, Mr. Falk

9  did the same thing but he did it abusively.  And when he

10  finds she filed, he immediately dismisses his case which

11  was the smart thing to do I suppose, given the fact that he

12  didn't qualify.

13          She was under an order to cooperate in the sale

14  of Malone Road, which she did do.  There was a sale

15  pending.  It was not, I don't believe, a bona fide sale.  I

16  talked to the buyer three or four times.  There was a

17  $3,000 cash deposit up until the time the escrow was to

18  close, with no loan approvals or anything like that, and

19  it's a 1.2 million dollar sale.  I mean it's just -- it was

20  not -- I talked to the people; it wasn't a bona fide deal.

21  I've never seen a bona fide deal on it.  There was one sale

22  on Malone Road proposed by Mr. Falk to his son.  I mean

23  none of it makes any sense.

24          We are investigating and the authorities are

25  investigating this Greenpoint mortgage thing and how that

13

1   came about because the loan applications contain a forged

2   signature of Ms. Falk.  We think it was forged by the

3   mortgage broker, not by Mr. Falk.  We don't know why.

4           THE COURT: Is your client being prosecuted?

5           MR. CHANDLER: My client is being prosecuted, but

6   let me tell you what for, Your Honor.  When this started

7   happening, there were some corporations that were

8   interposed as payees, and this is getting very close to the

9   investigation, and I would really prefer to submit the

10  names of these entities and individuals in camera because

11  I --

12          THE COURT: I just asked you a question, and

13  you've answered it, so anything else is up to you as to

14  what you want to say.

15          MR. CHANDLER: Okay.  Well, Mrs. Falk was

16  concerned about these entities, and it's my understanding

17  what she did is she had a power of attorney; she had a

18  valid existing power of attorney of Mr. Falk, and so as to

19  prevent any fraudulent concealment or transfer of these

20  properties to these entities, she conveyed -- she recorded

21  a deed conveying the property to herself on the power of

22  the attorney.  They claim that's a forgery.  She didn't

23  sign Michael Falk's name; she signed her name or maybe

24  Michael Falk's name and her name as attorney in fact under

25  an existing valid power of attorney that had not been

14

1  revoked as of that time.

2          She's also being prosecuted for attempting to

3  withdraw money from this $40,000 a month -- by the way, it

4  is 40,000 a month.  What Mr. Falk has done is he's had the

5  partnership put part of his distribution into a capital

6  account so he can hide it from her.  It's an old trick in

7  divorce cases.  They stick the money into his capital

8  account.  It grows and the income coming out is only, like

9  Mr. Burnett says, maybe $8,000 a month.  And then he tries

10 to base his support obligations based on 8,000.  The

11 increase in capital, he ignores.  It's an old trick.

12          The money he deposited into an account that was

13 at a bank where a joint account was maintained, Mrs. Falk

14 went down to the bank and tried to withdraw money out,

15 thinking -- believing that that is community property, and

16 the Court will see when the Court reviews the documents in

17 support of the motion for summary judgment, there is a

18 basis for that belief because the trust --

19          THE COURT: All right.  Well, I'm not trying the

20 criminal charges; I just wanted to know what it's pending

21 against.

22          MR. CHANDLER: Well, that's what it's about, and

23 it all ties back into what we're doing here.  The criminal

24 charges are a way to gain advantage in the divorce case,

25 and I doubt that it's even going to be prosecuted.

1           THE COURT: Well, you can understand my concern.

2           MR. CHANDLER: I do.  I have the same concern,

3    Your Honor.  I don't -- I've had Chapter 11 debtors serve

4    time in jail, and it's not pleasant.  I'm sure it's less

5    pleasant for them than it is for me.

6           THE COURT: All right.  Well, I'm going to have to

7    take these matters under submission.

8           MR. BURNETT: Your Honor, if I might?  Not only is

9    Mrs. Falk being prosecuted, but that prosecution is being

10   expanded.  Mrs. Falk charged thirteen hundred dollars on --

11          THE COURT: All right.  What she did and did not

12   do is irrelevant now.  What is relevant is the fact that

13   she is being prosecuted, which raises red flags as to her

14   fitness to be a Chapter 11 debtor which is a fiduciary for

15   her estate.  So I'm not going to try the charges, but I

16   understand there are charges pending, and it's a fairly

17   serious matter.  Is there anything you wanted to add to

18   your argument on the cross-motions for summary judgment?

19          MR. BURNETT: Yes, Your Honor.  I would like the

20   Court to make a ruling on our evidentiary objections to the

21   declaration that Mr. Chandler filed when he attached the

22   deposition testimony of Mr. Disharoon.  He did that the

23   night before the hearing.  That's inadmissible evidence.

24          THE COURT: I believe your objection is well

25   taken, but I'm going to rule on that after I've thought

16

1    about the matter further.  I understand your argument.

2    I've read the two State appellate cases which seem to

3    support your argument, but I can only look to the four

4    corners of the agreement.

5                MR. BURNETT: Thank you, Your Honor.

6                MR. CHANDLER: Thank you, Your Honor.

7                THE COURT: All right.  These matters are under

8    submission.  The parties can expect a written decision

9    within ten days.

10               MR. BURNETT: Thank you.

11        (Whereupon, the proceedings are concluded at 9:46

12   a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

17

1

2

3

4                          CERTIFICATE OF TRANSCRIBER

5

6              I certify that the foregoing is a correct

7     transcript from the digital sound recording of the

8     proceedings in the above-entitled matter.

9

10    DATED: February 26, 2008

11

12                          _____/s/ Jo McCall_____

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15    **EXCERPT OF RECORD 9**
16
17
18
19
20
21
22
23
24
25
26
27
28

1  CRAIG A. BURNETT, ESQ. ID. #118907
   LAW OFFICES OF C. BURNETT
2  537 FOURTH STREET, SUITE A
   SANTA ROSA, CALIFORNIA 95401
3  Telephone: (707) 523-3328
   Fax: (707) 523-3082
4  Email: cburnett@sonic.net

5  Attorney for Adversary Defendant/Counter-Claimant/Appellant

6              UNITED STATES BANKRUPTCY COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8  **In Re:**                          )    Case No.  07-10865
                                        )    Chapter   11
9                                       )
   SHANNON FALK,                        )    Adversary Proceeding No. 07-1080
10                        Debtor,       )
   ─────────────────────────────────   )
11                                      )
   SHANNON M. FALK,                     )    NOTICE OF APPEAL
12                        Plaintiff,    )
   vs.                                  )
13                                      )
   MICHAEL T. FALK,                     )
14                        Defendant,    )
   ─────────────────────────────────   )
15                                      )
   MICHAEL T. FALK,                     )
16                   Counter-Claimant,  )
   vs.                                  )
17                                      )
   SHANNON M. FALK,                     )
18                                      )
                   Counter-Defendant,   )
19 ─────────────────────────────────   )

20         Pursuant to Section 158(a)(1) of Title 28 of the United States Code, Adversary Defendant and

21 Counter-Claimant Michael T. Falk, appeals to the United States District Court for the Northern District of

22 California from the Order Granting Plaintiff's Motion for Summary Judgment ("Order") entered by the

23 Bankruptcy Court in this adversary proceeding on February 1, 2008.

24         The names of all other parties to the Order appealed from and the names, addresses and telephone

25 numbers of their respective attorneys are as follows:

26         **Adversary Plaintiff**:           Shannon Falk

27         **Represented by**:                David N. Chandler, Esq.
                                             David N. Chandler, p.c.
28                                           1747 Fourth Street
                                             Santa Rosa, CA 95404
                                             Telephone (707) 528-4331

1

2

**Adversary Defendant**:              Michael T. Falk

3

**Represented by**:              Craig A. Burnett, Esq.
Law Offices of C. Burnett
537 Fourth Street, Suite A

4              Santa Rosa, CA 95401
Telephone (707) 523-3328

5

Bret E. Campoy, Esq.

6              Campoy & Bertram, L.L.P
509 Seventh Street

7              Santa Rosa, CA 95401
Telephone (707) 525-5778

8

9

10    Date: 11 February 2008              /S/ *Craig A. Burnett*
Craig A. Burnett, CA State Bar No. 118907

11              Attorney for Adversary Defendant/Counterclaimant/Apellant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*NOTICE OF APPEAL*
*Page 2*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXCERPT OF RECORD 10**

**Entered on Docket**
**June 23, 2008**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  David N. Chandler, Sr.   SBN 60780
   David N. Chandler, Jr.   SBN 235427
2  DAVID N. CHANDLER, p.c.
   1747 Fourth Street
3  Santa Rosa, CA  95404
   Telephone: (707) 528-4331
4
   Attorneys for Plaintiff
5
                    UNITED STATES BANKRUPTCY COURT
6
                    NORTHERN DISTRICT OF CALIFORNIA
7

8
   IN RE:                        CASE NO. 07-10865
9
   SHANNON FALK,                 CHAPTER 11
10
        Debtor.            /
11
   SHANNON FALK,                 A.P. No. 07-1080
12
        Plaintiff,
13
   v.
14
   MICHAEL FALK,
15
        Defendant.        /      JUDGMENT
16

17      The Motion of Shannon Falk for Summary Judgment having been

18 granted  pursuant  to  Order  Granting  Summary  Judgment  and

19 Memorandum  of  Decision  filed  January  22,  2008,  and  cause

20 appearing therefore,

21      IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

22      1.  That  the  New  York  Limited  Partnership  interests

23 described  in  Exhibit  C  hereto  were  transmuted  to  community

24 property  by  the  Defendant  Michael  Falk  pursuant  to  the  Property

25 Settlement Agreement dated June 2, 2004.

26      2.  Said  New  York  Limited  Partnership  interests  are

27 property  of  the  within  estate  pursuant  to  11  U.S.C.  Section

28 541(a)(2).

1

1    3.   Defendant shall further forthwith turn over to the

2  estate all distributions received for or on account of such New

3  York Limited Partnership interests from and after January 1,

4  2006 and capital account balances.  Said funds shall be held in

5  the trust account of debtor's counsel pending further order of

6  the court which shall be made in the base case.

7    4.   Plaintiff shall have and recover from the Defendant

8  Michael Falk costs of suit.

9

10 Dated: June 23, 2008

11

12                                Alan Jaroslovsky
                                 U.S. Bankruptcy Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

09/12/2007 14:43 FAX  707 788 0527        ANDERSONZEIGLERDISHARDDH                      2 001/001

## ASSIGNMENT OF INTEREST IN LIMITED PARTNERSHIP

FOR VALUE RECEIVED, the undersigned does hereby grant, assign and transfer to MICHAEL T. FALK and SHANNON M. FALK, as Trustees under the MICHAEL T. AND SHANNON M. FALK MARITAL TRUST dated December 1, 2001, all his right, title and interest in and to all his NEW YORK LIMITED PARTNERSHIPS.

Dated: June 2, 2004.

_____
MICHAEL T. FALK

MICHAEL T. FALK and SHANNON M. FALK, Trustees, hereby accept the above-described assignment.

Dated: June 2, 2004.

_____
MICHAEL T. FALK, Trustee

_____
SHANNON M. FALK, Trustee

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF SONOMA    )

On June 2, 2004, before me, the undersigned notary public, personally appeared MICHAEL T. FALK and SHANNON M. FALK, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons or the entity upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal.



ROBERT D. SHARCON
COMM. 3528911
NOTARY PUBLIC CALIFORNIA
SONOMA COUNTY
My Comm. Expires Dec. 8, 2006

EXHIBIT "C"